Rickie GORDON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0009–CR–582.

Court of Appeals of Indiana.

Feb. 28, 2001.

Timothy J. Burns, Indianapolis, IN, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Rickie Gordon appeals his conviction for battery as a Class B misdemeanor following a bench trial. We affirm.

### Issues

Gordon argues:

I.   the trial court erred in admitting the testimony of police officer Kevin Kern relating what the victim had told him; and

II.  there was insufficient evidence to support his conviction.

## Facts

The facts most favorable to this verdict are that on June 10, 1999, the Indianapolis Police Department was dispatched to an apartment complex where Officer Kern came into contact with a woman named Maisha Williams. Williams was "visibly shaking," her voice was "crackling and shaky," and she had "redness about her neck" when she spoke with Kern. Record p. 95. Williams told him her boyfriend, Gordon, had become angry with her because of a conversation she had had with another man. Gordon had returned to Williams' apartment, Williams had followed, and a physical confrontation had ensued in which Gordon struck Williams on her face and chest with his fists. Kern saw that the apartment door was off its hinges and that it had "a big footprint in the middle of the door." Record p. 100. This corroborated Williams' recitation of the events. Kern later arrested Gordon, and when Kern told Gordon he was being arrested for battering Williams, Gordon voluntarily said to Kern, "Maisha bruises easily." Record p. 103. Gordon was charged with battery as a class A misdemeanor, but was only found guilty of the lesser included offense of battery as a class B misdemeanor because the trial court did not find sufficient evidence of bodily injury. This appeal followed.

## Analysis

### I. Officer Kern's Testimony

■ Gordon urges that the conversation Kern had with Williams, who did not testify at trial, was improperly admitted hearsay and, therefore, reversal of his conviction is appropriate. We strongly disagree. The trial court admitted Williams' statements to Kern into evidence as excited utterances. For a hearsay statement to be admitted as an excited utterance under Indiana Evidence Rule 803(2), three elements must be shown: (1) a startling event occurs; (2) a statement is made by a declarant while under the stress of excitement caused by the event; and (3) the statement relates to the event. *Jenkins v.*

*State,* 725 N.E.2d 66, 68 (Ind.2000). This is not a mechanical test; it turns on whether the statement was inherently reliable because the witness was under the stress of an event and unlikely to make deliberate falsifications. *Id.* Additionally, while the time period between the startling event and a subsequent statement is, of course, one factor to consider in determining whether the statement was an excited utterance, no precise length of time is required. *See Holmes v. State,* 480 N.E.2d 916, 918 (Ind.1985) (upholding trial court's determination that a statement was an excited utterance even though the time frame for the statement was not clear from the record).

■ Williams' statements to Kern more than satisfied the conditions for excited utterances. The record reflects that Williams placed a 911 call at 7:58 p.m., that Kern was dispatched to the scene at approximately 8:00 p.m., and that he arrived there three minutes after receiving the dispatch. Kern testified that Williams was visibly shaking and her voice was "crackling" when he spoke to her. Record p. 95. It is clear that Williams was still upset by a startling event, which she had reported to the police only minutes before; it is also reasonable to infer that the startling event that caused her visible distress was the physical altercation with Gordon that she described to Kern. Determining whether a statement constitutes an excited utterance is within the trial court's discretion, and its ruling will be reversed only for an abuse of that discretion. *Jenkins,* 725 N.E.2d at 68 (Ind.2000). The trial court did not abuse its discretion in this case.

### II. Sufficiency of the Evidence

■ Gordon next argues there is insufficient evidence to sustain his Class B misdemeanor battery conviction. To convict Gordon of this offense, the State was required to prove that he knowingly or intentionally touched Williams in a rude, insolent, or angry manner. Ind.Code

§ 35–42–2–1(a). When reviewing a conviction for sufficiency of the evidence, this Court looks to the evidence most favorable to the State and all of the reasonable inferences to be drawn from such evidence. *Shane v. State,* 716 N.E.2d 391, 395–96 (Ind.1999). We will affirm unless there is no way a reasonable trier of fact could have found the defendant guilty. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but rather look to the evidence to determine whether there was substantive probative evidence to support the judgment. *Id.*

The State amply met its burden of proof. Admissible evidence in the form of Kern's testimony outlined the crime of battery as committed on Williams. Gordon apparently argues that because he testified he did not commit the crime, and Williams did not testify at trial, the trial court erred in convicting him. Crimes that may be characterized as domestic violence offenses sometimes lend themselves to complaining witnesses recanting, failing to appear at trial for all sorts of reasons, and in rarer instances being intimidated into not testifying against the perpetrator.[1] Indiana Evidence Rule 803(2) is the vehicle by which competent, admissible evidence comes to our trial courts in many of these situations. Here, Williams told her story to the investigating officer, and Gordon himself acknowledged how she "bruises easily." There is more than sufficient evidence to sustain this conviction.

### Conclusion

The trial court did not abuse its discretion by permitting Officer Kern to relate his conversation with the victim in this case. Furthermore, there was ample evidence to support Gordon's conviction. Therefore, we affirm.

Affirmed.

BAKER and BROOK, JJ., concur.

---

1. According to a 1998 study by the Justice Department's Bureau of Statistics, only approximately fifty-two percent of females who were the victim of a nonlethal violent crime committed by an intimate report the incident to police; the report does not indicate how many of these victims that do report the crime recant or otherwise do not cooperate with the prosecution of the offender. Some of the most common reasons given for not reporting the crime at all, which may give some insight into why victims may later recant or not cooperate, were that they believed the incident was a "private or personal matter" (approximately one-third of those not reporting) or because of fear of offender retaliation (approximately one-sixth of those not reporting). A generic category of "other" accounted for almost another one-third of unreported cases of domestic violence. Bureau of Justice Statistics, U.S. Dep't of Justice, *Violence by Intimates: Analysis of Data on Crimes by Current or Former Spouses, Boyfriends, and Girlfriends* 19 (1998).