Terry DAVIS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0211–CR–539.

Court of Appeals of Indiana.

Oct. 3, 2003.

Transfer Denied Jan. 8, 2004.

Kimberly A. Jackson, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Terry Davis appeals his convictions, after a bench trial, for battery, as a class D felony, and domestic battery, as a class A misdemeanor.

We affirm.

### ISSUES

1. Whether the trial court erred in the admission of evidence.
2. Whether the evidence was sufficient to support the convictions.
3. Whether trial counsel was ineffective.
4. Whether the trial court relied upon an improper aggravating circumstance in sentencing.

### FACTS

On July 28, 2002, between the hours of 1 a.m. and 2 a.m., officers from the Indianapolis Police Department responded to a report of a domestic disturbance at 3888 Forest Grove Drive. Upon arriving at the scene, Officers Billy Glenn and Susan Reidenbach entered the apartment of Lucy Scott and found her standing in the rear of the apartment, distraught and crying. Scott's eyes were swollen shut, and she had blood on her face. The officers saw Davis and another man sitting on a couch watching television. Also, Scott's three-year-old daughter, D.S., was in the room. Officer Reidenbach observed that D.S. had blood on her face, shirt and palms, and that she had a cut on one of her hands. Other people were in the apartment as well.

Officer Reidenbach asked Scott what was wrong several times, but she did not answer. Officer Reidenbach noticed that as she asked Scott questions, Scott "would slightly turn to look to see who was . . . still in the room." (Tr. 10). Officer Reidenbach asked Scott whether one of the men on the sofa had struck her and Officer Reidenbach pointed to Davis. Davis then "kind of shrugged and shook his head [and] he said 'she'll never tell you I hit her.'" (Tr. 20). Scott did not respond verbally, but "she was visibly shaken by that statement." (Tr. 21). Based upon her observations of Scott's reactions and emotional state, Officer Reidenbach determined that the individual who had battered Scott was still in the apartment and asked the other officers to remove the men from the apartment.

Scott then told Officer Reidenbach that Davis, her boyfriend, had grabbed, choked, and struck her while they walked along 38th Street. Scott said that she ran toward a friend's home, but Davis caught, choked, and again struck her there. Scott stated that "[s]he was able to break free" and "[t]he people in the house helped her . . . get back to her apartment." (Tr. 11).

Scott explained that after she returned to her apartment, she was holding D.S. in

the bedroom when Davis began striking her in the face. Scott told Officer Reidenbach that Davis "ended up pushing her onto the bed. She still had her three-year-old daughter in her arms. She said that Mr. Davis jumped on the bed on top of both of them and just started punching at her and she lost consciousness." (Tr. 12). Witnesses at the scene reported to Officer Reidenbach that they pulled D.S. from beneath Davis.

Davis testified at trial. He acknowledged that at the time of the incident he was living with Scott at 3888 Forest Grove Drive. He stated that he had been living with Scott for six to eight months. Although they had no children together, he stated that he took care of her children when she was away. Also, he noted that Scott engaged in activities with which he disagreed, but that he stayed with her because he loved her.

As noted above, Davis was convicted of battery, as a class D felony, as to D.S., and domestic battery, as a class A misdemeanor, as to Scott. Davis and his sister testified at his sentencing hearing.[1] The trial court sentenced Davis to an executed three-year term of imprisonment for the class D felony, and a concurrent one-year term of imprisonment for the class A misdemeanor, with credit for the days that he had been jailed prior to sentencing.

### DECISION

1. *Admissible Evidence*

■ Scott did not testify at trial, and the only evidence presented by the State was the testimony of Officers Glenn and Reidenbach. At trial, Davis did not object to the officers' testimony. However, the trial court gratuitously stated that the excited utterance exception to the rule preventing the admission of hearsay evidence applied. Upon appeal, Davis claims that the excited utterance exception to the hearsay rule does not apply and that the evidence was improperly admitted. The State argues that Davis has waived review of the issue of the admission of the evidence because he failed to object. The waiver issue notwithstanding, Davis' claim fails because the excited utterance exception to the hearsay rule applies to the testimony of the officers in which they recounted Scott's statements.

■ Indiana Evidence Rule 801(c) provides that hearsay is an out-of-court statement offered to prove the truth of the matter asserted. According to Indiana Evidence Rule 802, hearsay evidence is inadmissible except as provided by law or by a list of exceptions to the hearsay rule found in the Rules of Evidence. Indiana Evidence Rule 803(2) allows the admission of excited utterances. In order for a hearsay statement to be admitted as an excited utterance, three elements must be present: (1) a startling event has occurred, (2) a statement was made by the declarant while under the stress of excitement caused by the event, and (3) the statement relates to the event. Evid. R. 803(2); *Lieberenz v. State*, 717 N.E.2d 1242, 1245 (Ind.Ct.App.1999), *trans. denied.*

■ The heart of the inquiry is whether the statement is inherently reliable because the declarant was incapable of thoughtful reflection. *Lieberenz*, 717 N.E.2d at 1245. The statement must be trustworthy under the facts of the particular case, and the trial court should focus upon whether the statement was made while the declarant was under the influence of the excitement engendered by the startling event. *Id.* While the time period

---

1. Although not evidence upon which to base Davis' convictions, their testimony reinforced the trial evidence that Davis and Scott functioned in a family relationship. (Tr. 44–47).

between the startling event and a subsequent statement is one factor to be considered when determining whether a statement is an excited utterance, no precise length of time is required. *Gordon v. State*, 743 N.E.2d 376, 378 (Ind.Ct.App. 2001). When a statement is given in response to a question, the statement must be unrehearsed and made while still under the stress of the excitement from the starting event. *Yamobi v. State*, 672 N.E.2d 1344, 1346 (Ind.1996).

Davis' argument upon appeal is that the statement by Scott was made too long after she was battered and that she had time for thoughtful reflection. In addition, he asserts that the statement was the product of repeated questioning by Officer Reidenbach. In *Lieberenz*, this court determined that statements made to police and relatives by the victim of a rape were admissible as excited utterances even though they were made several hours after the rape had occurred. 717 N.E.2d at 1246. It was determined that the facts of the case established that the victim was still under the stress of the excitement of the situation for several hours. These facts included that the victim was "balled up on the couch crying" when her husband returned home nearly three hours after the attacker had left. *Id.* (citation omitted). When the victim's mother-in-law arrived, she noted that the victim was a nervous wreck and repeatedly stated that "he hurt me." *Id.* (citation omitted). Police officers also described the victim as "very upset," "disturbed," not "making much sense," "extremely upset," and "sobbing." *Id.* (citations omitted).

In this case, Officer Reidenbach testified that Scott was "distraught" and "crying" when she arrived. (Tr. at 8). Scott was holding her hand over her face, her eyes were swollen shut, and there was blood around her mouth. Officer Reidenbach determined that the batterer was still in the apartment because Scott trembled and "would slightly turn to look to see who was . . . still in the room" each time Officer Reidenbach asked Scott what had happened. (Tr. at 10). Officer Reidenbach observed that when she pointed at Davis and elicited his response that "she'll never tell you I hit her," Scott "really lost it and . . . she was visibly shaken by that statement." (Tr. 20–21).

These facts, similar to those in *Lieberenz* establish that Scott was still under the stress of the excitement caused by the beating she had sustained. *See also Cox v. State*, 774 N.E.2d 1025, 1027 (Ind.Ct.App. 2002) (victim was under stress of event when she was crying and shaking and officer said she appeared upset when he spoke to her); *Gordon*, 743 N.E.2d at 378 (victim was under stress of event when she was visibly shaking and her voice was "crackling"). Because Scott was still under the excitement of the event when she made the statements to Officer Reidenbach, they are admissible.[2]

■ Davis has also raised the issue of the statements being inadmissible as excited utterances because they were made in response to questioning by Officer Reidenbach. Davis has not convinced us that such questioning rendered the statements inadmissible. While Officer Reidenbach did ask Scott whether someone in the room had hurt her, that question was based upon Officer Reidenbach's observations of Scott's demeanor. Also, Davis instigated additional inquiry by Officer

---

**2.** We note that no length of time between the battery and the statements was established. However, as demonstrated, whether the amount of time was two minutes or two hours is not determinative because the evidence clearly shows that Scott was still visibly upset and under the stress of the event when she made the statements.

Reidenbach when he volunteered that Scott would not tell that he had hit her. Officer Reidenbach's excellent police work in determining that the batterer was still in the apartment and having the men removed so that Scott would talk to her should not be viewed as coercive activity which tainted the statement.

### 2. *Sufficiency of the Evidence*

Davis contends that because Scott did not testify and because the officers' testimony was not admissible, no evidence exists that he committed domestic battery as to Scott. Further, Davis urges that the evidence at trial did not conclusively establish that D.S. was the three-year old child referred to in the officers' testimony or that Davis caused any injuries to D.S.

At the outset we recognize that Davis was convicted of domestic battery based upon the provision within Indiana Code § 35–42–2–1.3(2) applicable to a person who "is or was living as if a spouse of the other person. . . ." [3] In a recent decision by this court, *Vaughn v. State*, 782 N.E.2d 417, 420 (Ind.Ct.App.2003), we held that the same portion of the domestic battery statute was unconstitutionally vague as applied to Vaughn inasmuch as the only evidence of Vaughn's relationship to the victim was that they "had previously lived together and had an intimate relationship." *Id.* The evidence is quite different here.

▆▆▆▆ Although Davis does not herein challenge the constitutionality of the provi-

sion of the domestic battery statute, in light of *Vaughn*, we will briefly address the issue. A statute will not be determined to be unconstitutionally vague if persons of ordinary intelligence would comprehend it adequately to be informed of the proscribed conduct. *Glover v. State*, 760 N.E.2d 1120, 1123 (Ind.Ct.App.2002), *trans. denied.* A criminal statute need only inform the public of the generally proscribed conduct; it need not list with exactitude each item of conduct prohibited. *Id.* A statute is void for vagueness only if it is vague as applied to the precise circumstances of the case at hand. *Id.* Moreover, a statute is not necessarily vague even if a defendant can demonstrate that the legislature could have provided more precise language. *Szpunar v. State*, 783 N.E.2d 1213, 1219 (Ind.Ct.App.2003).

Under the circumstances in this case, the "living as if a spouse of the other person" provision within the domestic battery statute was susceptible of meaning so as to place Davis on notice that his conduct violated the domestic battery statute. Importantly, the evidence of Davis' relationship with Scott, as contrasted with the available evidence in *Vaughn*, provides the necessary basis to give meaning to the phrase.

Davis testified that at the time of the incident he had been living with Scott for approximately six to eight months. He stated that he had cared for her children, and implied that he was a better caregiver

---

**3.** A recent amendment to the domestic battery statute states:

 (b) In considering whether a person is or was living as a spouse or another individual in subsection (a)(2), the court shall review the following:
 (1) the duration of the relationship;
 (2) the frequency of contact;
 (3) the financial interdependence;
 (4) whether the two (2) individuals are raising children together;

 (5) whether the two (2) individuals have engaged in tasks directed toward maintaining a common household; and
 (6) other factors the court considers relevant.
P.L. 221–2003, Sec. 18. Inasmuch as the amendment was codified after the date of the occurrence in the present case, the amendment is not applicable here.

than Scott. He also indicated that he disliked some of Scott's activities, but that he stayed with her because he loved her. The latter statement negates the possibility that Davis was living in Scott's household in a relationship without a spouse-like commitment. Further, Officer Reidenbach testified that she understood from speaking to Scott that she was living with Davis and that she considered Davis her boyfriend. Their living arrangements, their mutual agreement that a relationship existed, Davis' commitment to Scott, and their joint child-rearing understanding all clearly indicate that Scott was living as if a spouse of Davis.

 Accordingly, we address the sufficiency issues actually presented by Davis.

In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and reasonable inferences favorable to the judgment and neither reweighing the evidence nor judging the credibility of the witnesses, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.

*Dunlap v. State,* 761 N.E.2d 837, 839 (Ind. 2002).

At the time of the offense, the domestic battery statute provided:

A person who knowingly or intentionally touches a person who:

\* \* \* \* \* \*

(2) is or was living as if a spouse of the other person;

\* \* \* \* \* \*

in a rude, insolent, or angry manner that results in bodily injury to the person

described in subdivision ... (2) ... commits domestic battery, a Class A misdemeanor. ...

I.C. § 35–42–2–1.3.

As noted above, Davis did not present a challenge to subsection (2). In fact, with regard to the domestic battery of Scott, his only challenge to the sufficiency of the evidence is based upon his complaint that the testimony of the officers was inadmissible. Because we have determined that the hearsay statements were admissible as excited utterances, we need not address this portion of his claim further except to state that the evidence admitted at trial disclosed that Davis grabbed, choked, and struck Scott to the point of her bleeding, swelling, and losing consciousness. Thus, the evidence is sufficient to support Davis' conviction for knowingly or intentionally touching Scott in a rude, insolent, or angry manner in violation of the domestic battery statute.

 Also with regard to the sufficiency of the evidence, Davis claims that there was no proof that he battered Scott's daughter as charged in the information. Specifically, he claims that while the charging information listed her name, the State never established the identity of the child at trial. Rather, he asserts that the only way that the State was able to tie the charging information to the evidence is that the probable cause affidavit stated that Scott's daughter was D.S., the child alleged to be injured. He then claims that the probable cause affidavit could not be used as evidence, and further, that the probable cause affidavit was not entered into evidence so that there was no evidence that the testimony was referring to D.S.[4] Further, he claims that there is no

---

4. Although the record is not completely clear as to whether counsel moved for the admission of the probable cause affidavit, at various points in the proceedings the parties and the court assumed that the probable cause affidavit had been admitted into evidence. At one

evidence establishing a link to any actions attributed to him and the injury to the child.

We find Davis' claim regarding D.S.'s identity to be unpersuasive. Davis has not provided this court with citation to any authority which requires that the name of a victim be specifically mentioned at trial in order for there to be conclusive proof of identity of a victim. Moreover, while D.S.'s name was not mentioned in the testimony of Officers Glenn or Reidenbach, the evidence is sufficiently clear to establish that the charging information relating to D.S., a three-year-old child, refers to the same three-year-old child who Officer Reidenbach testified was being held by Scott when she was attacked and thrown onto the bed. Officer Reidenbach also established that the three-year-old child who Scott was holding was Scott's own daughter. This evidence was sufficient for the trial court to conclude that D.S. was the child who was being held by Scott and who was injured in the altercation.

■ Davis also claims that the evidence did not establish that he touched D.S. We agree that there is no direct evidence that Davis touched D.S., but the trial court could have reasonably inferred from the evidence that Davis did touch D.S. in a rude, insolent or angry manner as proscribed by Indiana Code § 35–42–2–1.

The evidence reveals that Davis jumped on top of Scott and was viciously striking her while she was holding her daughter. Necessarily, Davis would have touched D.S. in a rude, insolent, or angry manner while he was striking Scott, to the point of her losing consciousness, as he was on top of her while she lay upon her bed and held her child. Triers-of-fact are charged with making such common sense inferences. *See e.g. Saxton v. State,* 790 N.E.2d 98, 99 (Ind.2003) (trier-of-fact could infer from evidence that defendant was standing on air conditioning unit at 5 a.m. peering into woman's bathroom window that defendant did so without woman's permission). The inference is further supported by the presence of the blood and the cut on D.S.[5] The evidence at trial was sufficient to support Davis' conviction for battery upon a person less than fourteen years-old, as a class D felony.

### 3. *Ineffective Assistance of Counsel*

■ To prove a claim of ineffective assistance of counsel, a petitioner must satisfy two components of the test. *McCary v. State,* 761 N.E.2d 389, 392 (Ind. 2002). First, the petitioner must show that counsel's performance was deficient in that representation fell below an objective standard of reasonableness, committing errors so serious that petitioner did not have the "counsel" guaranteed by the Sixth Amendment. *Id.* The petitioner must also show prejudice, that is, a reasonable prob-

point, in discussing the probable cause affidavit, the trial court noted: "Well, I don't think it even has to come in as an admission against her. I mean it's a probable cause affidavit. The defendant wants it in. It's coming in, and if that's what she [defense counsel] wants, then it comes in. It comes in, in its entirety, so think about whether that's what you want to do." (Tr. 16). Defense counsel responded: "Yes, ma'am." (Tr. 16). The witness then testified from the probable cause affidavit. Subsequently, the trial court asked

whether the probable cause had been admitted and defense counsel responded that it had been admitted. (Tr. 21). However, resolution of this aspect of Davis' claim is unnecessary in order for us to adequately address his issue.

5. We note that Officer Reidenbach testified, without objection, that witnesses at the scene claimed that they had to pull D.S. from beneath Davis.

ability that but for counsel's errors the result of the proceeding would have been different. *Id.* However, because the two components are separate and independent inquiries, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Landis v. State,* 749 N.E.2d 1130, 1134 (Ind.2001) (quoting *Strickland v. Washington,* 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

 Davis' claim that his counsel was ineffective arises based upon his assertions that his counsel should have objected to the admission of the hearsay statement and that his counsel attempted to admit the probable cause affidavit into evidence thereby establishing necessary facts to prove the State's case. Because the hearsay statements were admissible, counsel was not ineffective for failing to object to them. Trial counsel was also not ineffective for attempting to admit the probable cause affidavit into evidence. As we previously discussed, the probable cause affidavit was unnecessary to establish that D.S. was the child Officer Reidenbach was referring to in her testimony. Based upon these considerations, Davis' counsel was not ineffective.

### 4. *Sentencing*

 Sentencing decisions lie within the discretion of the trial court. *Powell v. State,* 751 N.E.2d 311, 314 (Ind.Ct.App. 2001). Sentencing decisions are reviewed for an abuse of discretion. *Id.* When enhancing a sentence, a trial court is required to state its specific reasons for doing so. *Id.* The sentencing statement must: (1) identify significant aggravating and mitigating circumstances, (2) state the specific reason why each circumstance is aggravating or mitigating, and (3) demonstrate that the aggravating and mitigating circumstances have been weighed to de-

termine that the aggravators outweigh the mitigators. *Id.* at 314–15. The trial court is responsible for determining the appropriate weight to give aggravating and mitigating circumstances. *Id.* at 315. A single aggravating circumstance may be sufficient to enhance a sentence. *Hatchett v. State,* 740 N.E.2d 920, 929 (Ind.Ct.App.2000), *trans. denied.* A sentence enhancement may still be upheld when a trial court improperly applies an aggravator but other valid aggravators exist. *Id.*

In sentencing Davis, the trial court stated that it found the aggravators to be that "[t]he victim on Count One was less than twelve years old" and that Davis "has a relatively lengthy criminal history." (Tr. at 52). The trial court did not expound upon its consideration of D.S.'s age, but did discuss Davis' criminal history in detail.

Davis claims that the trial court improperly considered the age of D.S. as an aggravating circumstance. For support, he cites to *Spears v. State,* 735 N.E.2d 1161, 1167 (Ind.2000), in which our supreme court stated that a trial court may not rely upon the material element of an offense as an aggravating circumstance. A trial court may not consider the age of the victim alone as an aggravating circumstance when age is a material element of a crime, but must consider the "particularized circumstances" of the case. *See McCarthy v. State,* 749 N.E.2d 528, 539 (Ind.2001) (age could not be considered as an aggravator because age of the victims was a material element of the crime and trial court did not set forth any particularized circumstances).

The State relies upon this court's recent decision in *Watson v. State,* 784 N.E.2d 515 (Ind.Ct.App.2003), to assert that, pursuant to the sentencing statute, the trial court should consider the age of the victim

as an aggravating circumstance, and therefore, the trial court did not err in this case. In *Watson,* we stated that trial courts must consider whether the victim of the crime was less than twelve years of age. *See* Ind.Code § 35–38–1–7.1(a)(4). However, the State fails to recognize that in *Watson,* the trial court considered factors attendant to the age of the victim relative to the nature and circumstances of the offense. *See Watson,* 784 N.E.2d at 521. It is this consideration which is necessary according to our supreme court and which is lacking here.

The trial court in this case made no mention of how the victim's age affected the nature and circumstances of the offense or how it related to the particularized circumstances of the crime. Rather, the trial court only stated that the age of the victim was less than twelve-years-old. While Indiana Code § 35–38–1–7.1(a)(4), outlining factors to be considered during sentencing, requires the trial court to consider that a victim is less than twelve years of age, Indiana Code § 35–42–2–1(a)(2)(B), the battery statute, requires that the crime of battery be elevated to a class D felony if the victim is less than fourteen years of age and the person committing the crime is at least eighteen. Because our supreme court has mandated that an element of a crime may not also be used to enhance a sentence without a reference to the particularized circumstances of the case, and the trial court here gave no particularized circumstances, the age of the victim was not a valid aggravator.

■■■ Davis requests that we remand this case to the trial court for resentencing because it is unclear how much weight the trial court assigned to each of the aggravating circumstances. As Davis correctly notes, when we cannot say with confidence that the trial court would have imposed the same sentence if it had considered the

proper aggravating and mitigating circumstances, we will remand for resentencing. *See McCann v. State,* 749 N.E.2d 1116, 1121 (Ind.2001). However, such is not the case here.

As noted above, the trial court made a single reference to the age of the victim. In contrast, the trial court strongly focused upon Davis' criminal record and his violations of probation, most recently in December of 2000, in ordering a sentence longer than the presumptive. Because the trial court only mentioned the improper aggravator but most clearly relied upon proper aggravators in ordering that Davis serve a three-year sentence for the class D felony conviction, to run concurrent to a one-year sentence for the class A misdemeanor, we can discern the relative weight given to the proper aggravator. *See Hatchett,* 740 N.E.2d at 929 (an enhanced sentence may be upheld even when the trial court improperly applies an aggravator if other proper aggravators exist). Therefore, the trial court did not commit reversible error in sentencing Davis.

For the above reasons, Davis' convictions are affirmed.

SULLIVAN, J., concurs with separate opinion.

BAKER, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

I concur in the lead opinion's determination that Davis's convictions are affirmed. However, as the author of the opinion in *Vaughn v. State,* 782 N.E.2d 417 (Ind.Ct. App.2003), *trans. denied,* I am compelled to explain what I perceive to be shortcomings in the treatment of *Vaughn* and the domestic battery statute in both the lead and concurring opinions.

In his concurring opinion, Judge Baker takes the position that it was the State's failure of proof—or lack of evidence for the condition of "living as if a spouse"—in *Vaughn* that gave rise to the claim that the statute was unconstitutionally vague as applied to Vaughn. *See* slip op. at 1, (Baker, J., concurring). That view is only partially correct. In actuality, the State presented the evidence which it viewed as sufficient to establish that Vaughn had "lived as if the spouse" of the victim. However, applying the standard used in challenges to statutes as being unconstitutionally vague, we held that because the words "living as if a spouse" of another are subject to broad and varying interpretation, an individual of ordinary intelligence would not comprehend that he would be subject to punishment under the domestic battery statute upon the basis that he formerly lived with the victim and that they had a sexual relationship. *Vaughn*, 782 N.E.2d at 421–22.

Both the lead opinion and the concurring opinion refer to the General Assembly's amendment of the domestic battery statute by the addition of several factors, most likely in response to our holding in *Vaughn*. In his concurring opinion, Judge Baker asserts "that the State has always been required to plead and prove such evidentiary factors when prosecuting a case under the domestic battery statute." Slip op. at 2, (Baker, J., concurring). While I agree that such should be true, I disagree with Judge Baker's assessment that such has always been so. The fact made clear by *Vaughn* is that prior to our decision in that case, the State was required by our courts to prove very little to establish that a person was "living as if the spouse" of another. Based upon what appears to have been the prevailing view at the time that Davis was convicted regarding the state of the domestic battery statute, it should come as little shock and amazement that neither the trial court judge nor Davis's counsel questioned whether the State had proved that Davis was "living as if the spouse" of Scott. That an extremely deferential view of the proof of this element existed was made clear in *Vaughn* by the determination at the trial court level that Vaughn had lived as if the spouse of the victim due solely to the facts that they had been involved in a sexual relationship and that they had lived together for a period of time. It was those facts which we determined were insufficient to place an individual upon notice that he was "living as if the spouse" of another so that he was subject to punishment under the domestic battery statute.

I agree with the lead opinion's conclusion that the evidence presented in this case is different than that which existed in *Vaughn*. The existence of these differences lead me to the conclusion that an individual of ordinary intelligence would comprehend that Davis was subject to prosecution under the domestic battery statute. In addition, these differences underscore our holding in *Vaughn*, that the domestic battery statute was unconstitutionally vague as applied to Vaughn. *Id.* at 420.

Be that as it may, I am somewhat concerned by the rationale employed in the lead opinion to conclude that the evidence showed that Davis had "lived as if the spouse" of Scott. The lead opinion indicates that Davis's statement "that he disliked some of Scott's activities, but that he stayed with her because he loved her ... negates the possibility that Davis was living in Scott's household in a relationship without a spouse-like commitment." Slip op. at 9. While this statement is indicative of the existence of a spouse-like commitment, it does not negate the possibility that some other relationship existed. Love does not necessarily create a spouse-

like commitment, just as a spouse-like commitment does not necessarily indicate that love is present. It was this principle that was a prominent concern in *Vaughn* because of the likely widely varying views among the public as to what facts would indicate that one was "living as if the spouse" of another. 782 N.E.2d at 421. Further, I am not convinced that Scott's statement to Officer Reidenbach that she considered Davis her boyfriend plays a significant role in whether their relationship constituted a spouse-like commitment. Nonetheless, the fact that they had lived together for several months and that Davis spent a considerable amount of time caring for Scott's children, in addition to Davis's acknowledgment that he stayed with Scott because he loved her, support the conclusion that Davis was "living as if the spouse" of Scott and subject to prosecution under the domestic battery statute. For this reason, I concur.

BAKER, Judge, concurring.

I concur with the lead opinion's determination that Davis's convictions must be affirmed. However, I am compelled to write separately in order to express my disagreement with the deference that the opinion imparts to *Vaughn v. State,* 782 N.E.2d 417 (Ind.Ct.App.2003), where another panel of this court held that our domestic battery statute was unconstitutionally vague.

In my view—and the lead opinion appears to acknowledge the same—it was the failure of proof in *Vaughn* that led to a reversal. *See* slip op. at 9. More to the point, it is my belief that the statute is salvageable and constitutional. I would note that in apparent direct response to the *Vaughn* holding, our General Assembly amended our Domestic Battery statute and set forth a number of circumstances that the factfinder should consider in de-

termining whether a person "is or was living as a spouse of the other person" to support a conviction under Indiana Code section 35–42–2–1.3(a). Under subsection (b) of the statute, those factors are:

(1) the duration of the relationship;

(2) the frequency of contact;

(3) the financial independence;

(4) whether the two individuals are raising children together;

(5) whether the two individuals have engaged in tasks directed toward maintaining a common household; and

(6) other factors the court considers relevant.

While the legislature has deemed it necessary to specifically list the above considerations, I submit that the State has always been required to plead and prove such evidentiary factors when prosecuting a case under the domestic battery statute.

There are times when the law seems to bear little relation to the language, experience, or culture of the people who have to live under it. Because the Constitution at times speaks in general terms, its meaning is particularly liable to bizarre abstractions parading as interpretations. Those untrained in the law may discern little or no connection between the Constitution and constitutional law. Surprisingly, the Constitution's majestic generalities even escape the notice of some attorneys and judges.

For example, it never occurred to Davis or his attorney or the judge trying his case that the phrase "living as if a spouse of the" batterer was vague. *See* Ind.Code Ann. § 35–42–2–1.3(2) (West Supp.2002–2003). They took for granted that the statute had a meaning definite enough to understand. But the Constitution, they are told, says that they could not "comprehend [the statute] adequately to inform them of the proscribed conduct." *Vaughn*

*v. State,* 782 N.E.2d 417, 420 (Ind.Ct.App. 2003). In other words, the statute is not actually vague; it is "unconstitutionally" vague. *See id.*

That said, even if Davis had raised the issue of "unconstitutional vagueness," I would still affirm his domestic battery conviction because the *Vaughn* rationale is simply not persuasive. Here, the evidence presented by the State was sufficient to support a conviction, whereas in *Vaughn,* it was not. For this reason, I would affirm Davis's convictions.