Giavonni WILLIAMS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 02A03–0908–CR–363.

Court of Appeals of Indiana.

Dec. 31, 2009.

Publication Ordered Feb. 24, 2010.

Patricia Caress McMath, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Giavonni Williams appeals his convictions of Strangulation[1] and Battery,[2] each as Class D felonies. We affirm.

### Issues

Giavonni Williams raises four issues on appeal, which we restate as follows:

I. Whether the trial court deprived him of his right to counsel in determining that he knowingly, willingly, and voluntarily exercised his right to self-representation;

II. Whether the trial court committed reversible error in denying his motion for separation of witnesses;

III. Whether the Battery statute was void for vagueness, as applied; and

IV. Whether there was insufficient evidence that he committed Battery.

### Facts and Procedural History

Kimberly Dickey ("Dickey") dated and engaged in sexual intercourse with Giavonni Williams a/k/a Michael Williams ("Williams"). Williams was living with Dickey and her two children, ages twelve and eight, at the time of the instant offense.

After midnight on March 28, 2008, Dickey placed two calls to 9-1-1. During the first, Dickey sought police assistance and stated that she had repeatedly asked Williams to leave her home, that he was refusing to do so, and that he had threatened her. A recording of the call indicates that a man could be heard arguing with Dickey.

---

1. Ind.Code § 35–42–2–9(b).

2. Ind.Code § 35–42–2–1(a)(2)(M).

Irate that Dickey telephoned 9–1–1, Williams verbally berated Dickey and started toward the door. He turned back, saying that he had forgotten something. When Dickey objected, Williams grabbed her by the throat, slammed her against a wall, and choked her until she lost consciousness. Dickey thought she was going to die. When she regained consciousness, she was in the hallway where Williams was continuously hitting and kicking her in the head and stomach. Grasping Dickey's hair, Williams dragged her down the hallway to a bathroom, where he threw her into a bathtub and continued to kick and hit her. Dickey looked up and saw her children screaming in the hallway. When Dickey screamed at her daughter to open the front door, Williams realized that the children were in the hallway. He grabbed a box of his possessions and ran out the door and down the street.

Dickey again called 9–1–1 and related that her ex-boyfriend, "Michael Williams," "just beat the s____ out of me in front of both my kids." Exhibit 1. Dickey added that he punched her, threw her down, slammed her against a wall, broke her glasses, threw her into a bathtub, and kicked her.

The State charged Williams with Strangulation, Domestic Battery, and Interference with the Reporting of a Crime, subsequently adding an Habitual Offender allegation and amending the second count to Battery, as a Class D felony (by a person over age eighteen, resulting in bodily injury to a family or household member, when knowingly committed in the physical presence of a child who might be able to see or hear the offense). The jury found Williams guilty of Strangulation and Battery and found that he was an Habitual Offender. The trial court entered judgments of conviction, imposed a sentence, and subsequently denied Williams' motion to correct error.

Williams now appeals his convictions.

### Discussion and Decision

#### I. Knowing Waiver of Counsel

As an initial matter, Williams argues that the trial court deprived him of his constitutional right to counsel by failing to ensure that he knowingly, intelligently and voluntarily waived his right to counsel. The right to appointed counsel is guaranteed by the Sixth Amendment and Article 1, Section 13 of the Indiana Constitution. The Sixth and Fourteenth Amendments also include a right to proceed pro se when a defendant voluntarily and intelligently elects to do so. *Indiana v. Edwards*, 554 U.S. 164, ——, 128 S.Ct. 2379, 2383, 171 L.Ed.2d 345 (2008). Therefore, where a criminal defendant waived the right to appointed counsel and asked to proceed pro se, we must decide whether the trial court properly determined that he knowingly, willingly, and voluntarily exercised his right to self-representation. *Jones v. State*, 783 N.E.2d 1132, 1138–39 (Ind.2003).

Whether there has been an intelligent waiver of right to counsel depends upon the "particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Poynter v. State*, 749 N.E.2d 1122, 1127 (Ind.2001) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). A defendant must "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (quoting *Adams v. Unites States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).

"It is sufficient for the lower court to acquaint the defendant with the advantages to attorney representation and the drawbacks of self-representation." *Jones*, 783 N.E.2d at 1138.

Williams first requested to represent himself at his initial hearing. A public defender was nonetheless appointed. At a subsequent hearing, Williams waived his right to proceed pro se. Williams then filed a "Pro Se Motion to Dismiss Charges for False Arrest in Violation of the 4th Amendment, 5th, 8th, 9th, and Petitioner's 14th Amendment Due Process with 'Affidavit'" and a "Pro Se Motion to Withdraw Public Defender for Ineffective Assistance of Counsel and Continuance of Trial with 'Affidavit.'" Appendix at 57–60.

During a hearing, Williams asserted that his attorney had a conflict of interest and that his attorney had shared privileged information with other inmates. The trial court denied Williams' motion to withdraw the public defender and noted that the defendant was free to hire an attorney. Williams immediately moved to proceed pro se. The trial court then conducted a colloquy in which Williams stated that he:

— took nursing classes in college,

— was not an attorney,

— did not attend law school,

— was not familiar with all of the rules of evidence,

— was not familiar with the rules of criminal procedure,

but that he:

— studied law while previously incarcerated,

— was aware of the elements of the charges against him,

— represented himself in a state felony case that was dismissed the day of the trial, and

— was convicted after a federal trial.

Williams acknowledged that he would be held to the same standard as a practicing lawyer and that he understood the disadvantages of representing himself. The trial court granted Williams' request to proceed pro se.

In conducting its colloquy, the trial court clearly warned Williams of the dangers of representing himself and the advantages of having an attorney, in compliance with *Jones*. We therefore conclude that Williams knowingly, willingly, and voluntarily exercised his right to represent himself.

## II. Separation of Witnesses

Williams next argues that the trial court erred in denying his motion for separation of witnesses. Indiana Rule of Evidence 615 provides as follows:

At the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of or discuss testimony with other witnesses, and it may make the order on its own motion. This rule does not authorize the exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

Ind. Evid. Rule 615. The purpose of the rule is "to prevent the testimony of one witness from influencing that of another." *Smiley v. State*, 649 N.E.2d 697, 699 (Ind. Ct.App.1995), *trans. denied.* While Rule 615 does not address when a motion must be made, we have stated that, "[i]deally, a motion for separation of witnesses will be made before any witness testifies." *Anderson v. State*, 743 N.E.2d 1273, 1277 (Ind.Ct.App.2001). Here, there is no dispute that Williams so moved before the State began presenting its case.

"[U]nder Rule 615, the trial court is required to grant motions for separation of witnesses orders." *Hernandez v. State,* 716 N.E.2d 948, 950 (Ind.1999). On appeal, the State concedes that, "the trial court had no discretion and should have granted the motion." Appellee Brief at 6. Denial of the motion was error.

■ A violation of Evidence Rule 615 may be harmless error. *Stafford v. State,* 736 N.E.2d 326, 330–31 (Ind.Ct.App.2000), *trans. denied.* The parties agree that prejudice is presumed by a violation of the rule and that "the presumption can be overcome if the non-movant can show there was no prejudice." Appellee Br. at 14 (citing *Stafford,* 736 N.E.2d at 330–31). *See Osborne v. State,* 754 N.E.2d 916, 926 (Ind.2001) (Boehm, J., concurring, in which three of five justices adopted the reasoning of the dissent in *Hernandez*); and *Hernandez v. State,* 716 N.E.2d 948, 955 (Ind. 1999) (Boehm, J., dissenting).

For Strangulation, the State had to prove that Williams, in a rude, angry, or insolent manner, knowingly applied pressure to Dickey's throat or neck in a manner that impeded her normal breathing or blood circulation. Ind.Code § 35–42–2–9. For Battery as charged, the State had to prove that Williams, over age eighteen, knowingly touched Dickey, a family or household member, in a rude, insolent, or angry manner, resulting in bodily injury to Dickey, and "committed the offense in the physical presence of a child less than sixteen (16) years of age, knowing that the child was present and might be able to see or hear the offense." Ind.Code § 35–42–2–1(a)(2)(M).

In his defense, Williams emphasized that neither of Dickey's children identified him in their first communications with the police. Also, he asserted that he was not Dickey's attacker.

The State called thirteen witnesses. Its first witness testified merely as the custodian of the recording of the two 9–1–1 calls. Thus, her testimony was limited to the admission of recordings of communications made by Dickey. As noted above, Dickey identified the attacker as her ex-boyfriend, Williams, in the second 9–1–1 recording.

Dickey, the State's second witness, testified unequivocally that Williams, who was living with her and her children, angrily choked her and beat her at length in her home and that her children observed part of the attack. Thus, her testimony clearly established Williams' identity, the nature of their relationship, the severity and nature of the attack and her injuries, and the fact that her children observed the attack. Dickey therefore testified to every element of the crimes as charged. During her testimony, the trial court admitted nine photographs detailing Dickey's injuries, including trauma to her face, ear, neck, elbow, arm, and knee.

While the State called eleven more witnesses, there is no indication that Williams suffered prejudice from their being in the courtroom, even if each of them observed the testimony of every preceding witness. The State's third witness, the emergency room physician who treated Dickey, testified from notes that she and a nurse made during their treatment of the victim. The State's fourth and fifth witnesses, Dickey's children, testified very briefly regarding the attacker's identity and the fact that they observed the attack.

The State's other eight witnesses were employees of the Ft. Wayne Police Department ("FWPD"). Three investigating officers testified in varying detail about their investigations, including statements made by Dickey and her children on the night of the attack. Detective Robin Carroll briefly described the children's state-

ments, including the fact that Dickey's son repeatedly tried to identify his mother's attacker, but that Det. Carroll could not understand him. She testified that she, "couldn't understand what name he was saying. He got frustrated with me and then just started saying he. Very forcefully saying he, he. So that's what I put in my report." Transcript at 165.

While Officer Jason Anthony briefly summarized what Dickey had told him on the night of the attack, Williams' cross-examination of Officer Anthony focused on Dickey's alleged injuries and the evidence relating to Strangulation. Next, Officer Mark Brown testified simply that Dickey never vacillated at any point during the investigation regarding the identity of her attacker.

Two FWPD employees testified for purposes of introducing photographs duplicative of those already admitted during Dickey's testimony. One FWPD employee testified that he was unable to immediately locate the attacker. Finally, two others testified that they assisted in Williams' arrest because a detective was pregnant.

Dickey's testimony, the photographs admitted during her testimony, and the 9–1–1 tape constituted significant evidence to support verdicts that Williams committed Strangulation and Battery as charged. While the State has conceded that prejudice must be presumed here, there is nothing in the record to suggest that Williams actually suffered any prejudice from the trial court's denial of his motion for separation of witnesses. Williams' defense, that he was not Dickey's attacker, was addressed by the 9–1–1 tape, Dickey's extensive testimony, and a supplementary offense report prepared by one of the FWPD detectives and offered by Williams as a defense exhibit. The violation of Evidence Rule 615, denying Williams' motion for separation of witnesses, was harmless error.

### III. Vagueness

■ Williams argues that the Battery statute was unconstitutionally vague because the terms "dating," "sexual relationship," and "family or household member" were not sufficiently definite. The Indiana Supreme Court has stated that "the constitutionality of a statute may be raised at any stage of the proceeding including raising the issue sua sponte by this Court." *Morse v. State,* 593 N.E.2d 194, 197 (Ind. 1992).

■ A statute is presumed to be constitutional. *Brown v. State,* 868 N.E.2d 464, 467 (Ind.2007). The party challenging a statute has the burden of proving that it is unconstitutional. *Id.* A penal statute must clearly define its prohibitions and may be invalidated as vague for either of two reasons: "(1) for failing to provide notice enabling ordinary people to understand the conduct that it prohibits, and (2) for the possibility that it authorizes or encourages arbitrary or discriminatory enforcement." *Id.* "A statute is not void for vagueness if individuals of ordinary intelligence could comprehend it to the extent that it would fairly inform them of the generally proscribed conduct." *Id.* (citing *Klein v. State,* 698 N.E.2d 296, 299 (Ind. 1998)).

For Battery as charged, the State had to prove that Dickey was a "family or household member" of Williams. Ind.Code § 35–42–2–1(a)(2)(M). That term was defined disjunctively to mean, among other things, that one person "is dating or has dated the other person" or "is or was engaged in a sexual relationship with the other person." Ind.Code § 35–41–1–10.6(a). In a recent case, the State conceded that the use of the term "dating" in a probation order was impermissibly vague. *Collins v. State,* 911 N.E.2d 700,

713 (Ind.Ct.App.2009). We therefore proceed to determine whether the phrase "is or was engaged in a sexual relationship" was void for vagueness.

On appeal, Williams emphasizes that "there is no evidence if there was a sexual relationship or just one incident of sexual intercourse or something in between." Appellant Brief at 12. In support, he cites a single authority, *Vaughn v. State,* in which we held that the phrase "is or was living as if a spouse of the other person" was unconstitutionally vague, as applied to Vaughn. *Vaughn v. State,* 782 N.E.2d 417, 420–21 (Ind.Ct.App.2003), *trans. denied.* We therefore vacated Vaughn's Domestic Battery conviction.

Later that year, however, we upheld a Domestic Battery conviction in which the same statutory phrase was applied. *Davis v. State,* 796 N.E.2d 798, 804–05 (Ind.Ct. App.2003), *trans. denied.* Our unanimous decision in *Davis* featured three opinions, including one concluding that "the statute is salvageable and constitutional." *Id.* at 810 (Baker, J. concurring). *See also Williams v. State,* 798 N.E.2d 457, 459–62 (Ind.Ct.App.2003) (reviewing a conviction under the same statutory phrase for a sufficiency of the evidence, but not analyzing vagueness).

Although "sexual relationship" was not defined for purposes of Indiana Code Title 35 (Criminal Law and Procedure), "sexual intercourse" was defined as "an act that includes any penetration of the female sex organ by the male sex organ." Ind.Code § 35–41–1–26. "Relationship" is commonly defined as "kinship, consanguinity, affinity" or "a state of affairs existing between those having relations or dealings." *Webster's Third New Int'l Dictionary* 1916 (2002).

While we concluded in *Vaughn* that the term "living as if a spouse" was vague, we distinguished between the ambiguity of that phrase and "living together and having a sexual relationship" or "living in the same home and having a sexual relationship." *Id.* at 421–22. Thus, even our analysis in *Vaughn* repeatedly implied that the term "sexual relationship" was not vague. Moreover, the phrase "is or was engaged in a sexual relationship" makes clear that the status of the relationship at the time of the offense is not relevant. Rather, the level of the offense is heightened depending upon, among other things, whether the offense results in bodily injury to one with whom the perpetrator has or ever had a sexual relationship. In using this phrase, the General Assembly recognized what we described in *Williams* as "the heightened passions that accompany intimate romantic relationships." *Williams,* 798 N.E.2d at 461.

We conclude that the phrase "is or was engaged in a sexual relationship with the other person" was sufficiently definite to inform ordinary people of the prohibited conduct and to avoid arbitrary or discriminatory enforcement of the statute. The statute therefore was not unconstitutionally vague. It certainly was not vague as applied to Williams because Dickey testified that they were living together and that their relationship included some sexual intercourse.

### IV. Sufficiency of the Evidence

 Finally, Williams argues that the evidence was insufficient to prove beyond a reasonable doubt that he committed Battery under Indiana Code Section 35–42–2–1(a)(2)(M). In reviewing a challenge to the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the verdict, even when confronted with conflicting evidence. *Drane v. State,* 867 N.E.2d 144, 146–47 (Ind.2007). We do not assess witness credibility or reweigh the evidence, affirming a conviction unless no reasonable

factfinder could find the elements proven beyond a reasonable doubt. *Id.* "It is therefore not necessary that the evidence 'overcome every reasonable hypothesis of innocence.'" *Id.* at 147 (quoting *Moore v. State,* 652 N.E.2d 53, 55 (Ind.1995)).

A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits Battery. I.C. § 35–42–2–1(a). The offense is a Class D felony if: (1) it results in bodily injury to "a family or household member"; (2) the defendant was over age eighteen; and (3) committed the offense in the physical presence of a person under age sixteen, "knowing that the child was present and might be able to see or hear the offense." I.C. § 35–42–2–1(a)(2)(M). "Bodily injury" means "any impairment of physical condition, including physical pain." Ind.Code § 35–41–1–4. As noted above, an "individual is a 'family or household member' of another person if [among other things] the individual ... is or was engaged in a sexual relationship with the other person." Ind.Code § 35–41–1–10.6. While "sexual relationship" is not defined for purposes of Indiana Code Title 35, "sexual intercourse" is defined as "an act that includes any penetration of the female sex organ by the male sex organ." Ind.Code § 35–41–1–26.

There is no dispute that Williams was over age eighteen or that Dickey's children were under age sixteen. Dickey testified that Williams was "very irate" that she placed the first call to 9–1–1. In the second 9–1–1 tape, Dickey stated that Williams, her ex-boyfriend, "just beat the s____ out of me in front of both my kids." Ex. 1. She also stated that Williams punched her, threw her down, slammed her against a wall, broke her glasses, threw her into a bathtub, and kicked her. Dickey suffered a series of injuries documented by photographs taken after the incident. She described the attack as follows, beginning with Williams grabbing her by the throat:

A: I thought I was going to die. I instantly started to lose consciousness. I felt like I couldn't breathe and I was scared. All I kept thinking of was my kids.

Q: ... At some point you regained consciousness, what happen[ed] at that point and time?

A: At that point I was down on my knees in the hallway where he was continuously hitting and kicking me in the head and in the stomach area and he drug me by my hair down the hallway to the bathroom, threw me in the bathtub, continued to hit me and kick me. Got me back out of the bathtub on the floor. At that point is when I looked up and in between his legs I could see my children standing in the hallway screaming.

Tr. at 87–88. When this occurred, Williams knew that Dickey's two children were in the home.

As noted earlier, Dickey also testified that she and Williams were living together and that their relationship included some sexual intercourse. Finally, we note that Williams offered into evidence the following note of the emergency room where Dickey was treated:

[Dickey] says that her boyfriend came home approximately one month ago after being incarcerated for the past six years. Since then, she has been off and on trying to live with him. She says that some social issues put stresses on them and today she asked him to leave.

Defendant's Exhibit G. There was sufficient evidence for the jury to find beyond a reasonable doubt that Williams committed Battery as charged.

## Conclusion

The trial court did not deprive Williams of his right to counsel in determining that he knowingly, willingly, and voluntarily exercised his right to self-representation. Although the trial court erred in denying Williams' motion for separation of witnesses, the error was harmless. Indiana Code Section 35–42–2–1(a)(2)(M) was not void for vagueness as applied to Williams. Finally, there was sufficient evidence for a jury to find beyond a reasonable doubt that Williams committed Battery as charged.

Affirmed.

BAKER, C.J., and ROBB, J., concur.

### ORDER

Appellant, by counsel, has filed a Motion to Publish.

Having reviewed the matter, the court FINDS AND ORDERS AS FOLLOWS:

1. Appellant's Motion to Publish is GRANTED, and this Court's opinion handed down on December 31, 2009, marked Memorandum Decision, Not for Publication, is now ORDERED PUBLISHED.

BAKER, C.J., BAILEY, ROBB, JJ., concur.