**Hershel HAMMON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 52A02–0308–CR–693.

Court of Appeals of Indiana.

June 14, 2004.

Rehearing Denied Aug. 9, 2004.

Kimberly A. Jackson, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Hershel Hammon appeals his conviction for domestic battery, a Class A misdemeanor. We affirm in part and reverse in part.

### Issues

The issues before us are:

I. whether the trial court erred by admitting into evidence statements made by the victim to the arresting officer; and

II. whether the trial court erred in allowing Hammon's $300.00 cash bond to be applied to administrative fees and to the costs of his representation by a public defender.

### Facts

The relevant facts most favorable to the conviction follow. On February 26, 2003, Peru police officer Jason Mooney was dispatched to 590 East Fifth Street. Upon his arrival, Officer Mooney approached the residence and spoke with A.H., who he thought was timid and frightened. Officer Mooney inquired of A.H. whether there "was a problem and if anything was going on," to which A.H. responded, "no." Tr. p. 8. However, when he entered the house, Officer Mooney observed that the living room was in a state of disarray with broken objects littering the floor. *Id.* at 9–10.

Hammon told Officer Mooney that he and A.H. had argued but that it had been resolved and had "not become physical." *Id.* at 11.

Officer Mooney then separated Hammon from A.H., at which time A.H. told him that Hammon had physically attacked her by throwing her down into the glass from a shattered heater and that he punched her twice in the chest. *Id.* at 12. Officer Mooney did not notice any visible physical injuries to A.H. However, A.H. did indicate that she was in some pain as a result of the attack.

During the time when Officer Mooney separated Hammon from A.H., Hammon attempted to enter the room where Mooney was speaking with A.H. When Hammon approached, A.H. became quiet and seemed afraid. A.H. also completed a battery affidavit.

Hammon was arrested and charged with domestic battery. A bench trial was conducted on May 9, 2003. A.H. did not testify, but Officer Mooney testified regarding A.H.'s statements. Hammon was convicted of domestic battery, a Class A misdemeanor. Hammon appeals the conviction.

## Analysis

### I. Admissibility of Victim's Statements

Hammon first challenges the trial court's admission of statements made by A.H. to Officer Mooney and argues that the officer's testimony relaying the statements was not admissible under the excited utterance exception to the hearsay

rule.[1] We review questions regarding the admissibility of evidence only for a manifest abuse of discretion resulting in an unfair trial. *Williams v. State*, 782 N.E.2d 1039, 1045 (Ind.Ct.App.2003).

Pursuant to the Indiana Rules of Evidence, "hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Certain exceptions to this rule may apply, including the excited utterance exception that is at issue in this case. Indiana Evidence Rule 803(2) defines an "excited utterance" as "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Indiana courts have previously distilled this rule into three distinct elements that the party who seeks admission must prove: "(1) a startling event occurs; (2) a statement was made by a declarant while under the stress of excitement caused by the event; and (3) the statement relates to the event." *Williams*, 782 N.E.2d at 1046.

Officer Mooney testified that he responded to a domestic disturbance call and that when he encountered the victim, she seemed "frightened" and "timid." Tr. pp. 5, 7–8. Officer Mooney further testified that when he entered the residence, the living room was in "disarray," and he observed broken glass on the floor in front of a glass heating unit that appeared to be broken with flames coming out the front of the unit. *Id.* at 10. Officer Mooney then testified that when he removed Hammon from the room, A.H. informed him that she

---

1. Hammon also challenges the trial court's admission of the battery affidavit signed by A.H. and argues that it was incorrectly admitted under the present sense impression exception to the hearsay rule because A.H. did not make her statement at the same time that she perceived the event described in the statement. However, because we conclude that the trial court properly admitted Officer Mooney's testimony regarding A.H.'s statements, any error in admitting the battery affidavit was harmless because it was cumulative of Officer Mooney's testimony. *See Willis v. State*, 776 N.E.2d 965, 967 (Ind.Ct.App.2002).

and Hammon had been engaged in an argument and that Hammon had broken things in the living room. Officer Mooney testified that A.H. told him that Hammon threw her down into the glass from the heater and that he punched her twice in the chest. *Id.* at 12. It is with the admission of this final statement that Hammon takes particular issue.

The facts of this case are similar to those in *Gordon v. State,* 743 N.E.2d 376, 378 (Ind.Ct.App.2001). In *Gordon,* police responded to a domestic disturbance call and observed a woman who was "visibly shaking" and whose voice was "crackling and shaky." *Id.* The woman described to police the events that occurred the night of the battery, and the officer recounted her statements at trial. We held that the officer's testimony was correctly admitted into evidence under the excited utterance exception to the hearsay rule because the officer's observations illustrated that the victim was still upset by the startling event she described to the officer and that it was reasonable to infer that this event caused the victim's distress. *Id.* at 378.

We reach the same conclusion in this case. A startling event occurred at the residence before police arrived. Officer Mooney testified that upon entering the house, he observed broken objects littering the living room floor and flames escaping from a shattered heater. Such observations, particularly that of the broken heater, clearly indicate that a startling event had recently taken place. This element is satisfied.

Indiana Evidence Rule 803(2) further requires that the statement for which one seeks admission "was made by declarant while under the stress of excitement caused by the event." It is clear from Officer Mooney's description of A.H. as "timid" and "frightened" that he perceived her to still be under the stress of the event. Officer Mooney also stated that A.H. grew quiet when Hammon entered the room. Further, it is reasonable to infer that Officer Mooney responded promptly to the dispatch after receiving it and that he arrived in a timely manner such that, when he arrived, A.H. was still greatly affected by the earlier event.

Our supreme court has held that "[t]he amount of elapsed time between the incident and the utterance weighs in determining the ability of the witness to regain his or her composure and engage in reflective thought." *Holmes v. State,* 480 N.E.2d 916, 918 (Ind.1985). Thus, "the heart of an inquiry is whether the declarant was incapable of thoughtful reflection." *Jones v. State,* 800 N.E.2d 624 (Ind.App. Ct.2003). Further, "[t]he amount of time that has passed between the event and the statement is relevant but not dispositive." *Burdine v. State,* 751 N.E.2d 260, 264 (Ind. Ct.App.2001), *trans. denied* (citing *Noojin v. State,* 730 N.E.2d 672, 676 (Ind.2000)). "No precise length of time is required." *Gordon,* 743 N.E.2d at 378.

Although Officer Mooney did not testify as to the precise amount of time that passed between his receipt of the domestic disturbance dispatch and the time he arrived at the residence, he was justified in concluding that A.H. was still upset because of the startling event that led to the call. Further, given the officer's observations of A.H. as well as the state of her living room, the trial court did not abuse its discretion in finding that A.H. was still under the stress of the event at the time she made her statement to police. We reject Hammon's contention that A.H. was no longer under the stress of the event because the State failed to establish the precise length of time that passed before Officer Mooney arrived.

We next address the final element required to find that the declarant's statement was an excited utterance. Indiana Evidence Rule 803(2) requires that the statement at issue must be related to the startling event. A.H.'s statement clearly was related to the facts and circumstances surrounding the startling event and this element is met.

We are not persuaded by Hammon's argument that Officer Mooney's testimony should have been withheld because A.H. gave her statement in response to his questions. Our supreme court has held that "[a] declaration does not lack spontaneity simply because it was an answer to a question." *Yamobi v. State*, 672 N.E.2d 1344, 1346 (Ind.1996). The fact that Officer Mooney questioned Hammon does not mean her statement was not an excited utterance. In sum, we hold that the trial court did not abuse its discretion in concluding that A.H.'s statement was an excited utterance.

■ Although we have concluded that A.H.'s statements to Officer Mooney fell under the excited utterance exception to the hearsay rule, that does not end our analysis today, given a recent and substantial change in Sixth Amendment jurisprudence announced by the United States Supreme Court while this appeal was pending. Specifically, the Court held in March of this year that when the prosecution seeks to introduce a "testimonial" out-of-court statement into evidence against a criminal defendant, the Confrontation Clause of the Sixth Amendment requires two showings: (1) that the witness who made the statement is unavailable; and (2) that the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington,* —— U.S. ——, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004). In reaching this holding, the Court squarely criticized and overruled *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).[2] *Roberts* had established the rule that hearsay statements made by an unavailable witness were admissible against a criminal defendant if the statement fell "within a firmly rooted hearsay exception" or otherwise bore "particularized guarantees of trustworthiness." *Id.* at 66, 100 S.Ct. at 2539.

■ By contrast, the *Crawford* opinion held that "[l]eaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices." *Crawford,* —— U.S. at ——, 124 S.Ct. at 1364. The Court then undertook an analysis of the state of the common law in 1791, when the Sixth Amendment was adopted, to support its conclusion that the Framers intended the Confrontation Clause to allow the admission of out-of-court "testimonial" statements by an unavailable witness only if the defendant had a prior opportunity for cross-examination.[3] *Id.* at ——, 124 S.Ct.

**2.** Interestingly, Justice Scalia last summer criticized the majority in *Lawrence v. Texas,* 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), for not giving due regard to stare decisis and for its "surprising readiness to reconsider a decision rendered a mere 17 years ago in *Bowers v. Hardwick* [478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986)]." 478 U.S. at ——, 123 S.Ct. at 2488 (Scalia, J., dissenting). However, Justice Scalia's majority opinion in *Crawford* never mentions the principle of stare decisis and the

readiness to overrule a case decided 24 years ago, much to Chief Justice Rehnquist's chagrin. *See Crawford,* —— U.S. at ——, 124 S.Ct. at 1378 (Rehnquist, C.J., concurring in judgment).

**3.** The Court stated that it did "accept" the principle that a defendant could forfeit the right to confrontation through wrongdoing, presumably meaning that if a defendant causes a witness' unavailability, he cannot claim Confrontation Clause protection. *See*

at 1365–66. Thus, proper determination of whether an out-of-court statement is admissible against a criminal defendant is no longer solely governed by whether it falls within a recognized exception to the hearsay rule. Instead, if the statement was made in a situation where the defendant did not have an opportunity for cross-examination, the statement must be excluded if it is "testimonial." If a statement is "non-testimonial," its admission in a criminal trial is left "to regulation by hearsay law...." *Id.* at ——, 124 S.Ct. at 1370.

The majority in *Crawford* expressly declined to give a precise definition to the crucial word "testimonial." *Id.* at ——, 124 S.Ct. at 1374.[4] It did offer some guidance, however. First, "testimonial" statements need not necessarily be ones given under oath; unsworn statements may also be "testimonial." *Id.* at ——, 124 S.Ct. at 1364–65. Second, the Court gave the following examples of "testimonial" statements:

> ex parte in-court testimony or its functional equivalent ... such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially ... extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions ... statements that were made

under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at ——, 124 S.Ct. at 1364 (citations omitted).

From these generalities, the Court extrapolated that statements made during a police "interrogation" would qualify as "testimonial" statements. *Id.* Again, however, the Court declined to precisely define "police interrogation," aside from noting that it used "the term 'interrogation' in its colloquial, rather than any technical legal, sense." *Id.* at ——, 124 S.Ct. at 1365 n. 4. It also found that the police questioning at issue in the case qualified as "interrogation" "under any conceivable definition" where the witness knowingly gave a recorded statement "in response to structured police questioning...." *Id.* The Court also compared police "interrogation" to official pre-trial examinations of witnesses by English magistrates or justices of the peace before England acquired a professional police force in the 19th century. *Id.* at ——, 124 S.Ct. at 1364–65. Finally, we note the Court dwelled at length upon the treason trial of Sir Walter Raleigh in 1603 and the out-of-court statements of Lord Cobham, Raleigh's alleged co-conspirator, contained in a letter and in an examination before the Privy Council,

---

*Crawford,* —— U.S. at ——, 124 S.Ct. at 1370. Application of the "wrongdoing" exception to the Confrontation Clause undoubtedly will be difficult in many domestic violence cases where a victim does not cooperate with the prosecution. If that is the case, police and prosecutors may then have to embark on a separate investigation into whether the defendant caused the victim's unavailability. The question will probably also frequently arise as to what amounts to "wrongdoing" by a defendant in such a scenario, i.e. will only physical "wrongdoing" (another battery) by a defendant suffice, or can psychological pressure on

a victim not to cooperate be enough, and if so, how is such pressure to be measured?

4. Chief Justice Rehnquist, joined by Justice O'Connor, voted to uphold *Roberts* and strongly condemned the majority for not defining "testimonial," stating: "Rules of criminal evidence are applied every day in courts throughout the country, and parties should not be left in the dark in this manner." *Crawford,* —— U.S. at ——, 124 S.Ct. at 1378 (Rehnquist, C.J., concurring in judgment).

used to condemn Raleigh to death. *Id.* at ——, 124 S.Ct. at 1360.

With that background and context, we hold the statement A.H. gave to Officer Mooney was not a "testimonial" statement. It appears to us that the common denominator underlying the Supreme Court's discussion of what constitutes a "testimonial" statement is the official and formal quality of such a statement. A.H.'s oral statement was not given in a formal setting even remotely resembling an inquiry before King James I's Privy Council; it was not given during any type of pre-trial hearing or deposition; it was not contained within a "formalized" document of any kind.[5]

■ The closer question is whether A.H.'s statement was produced during the course of a police "interrogation." Admittedly, A.H. gave her statement in direct response to questioning by Officer Mooney. However, we observe that the Supreme Court chose not to say that any police *questioning* of a witness would make any statement given in response thereto "testimonial"; rather, it expressly limited its holding to police "interrogation." We conclude this choice of words clearly indicates that police "interrogation" is not the same as, and is much narrower than, police "questioning." To the extent the Supreme Court said that it used the term "interrogation" "in its colloquial . . . sense," we believe that reference to a lay dictionary for a definition of "interrogation" is appropriate. *Id.* at ——, 124 S.Ct. at 1365 n. 4. "Interrogation" is defined in one common English dictionary as "To examine by questioning formally or officially." The American Heritage College Dictionary 711 (3d ed.2000). This is consistent with our prior observation that the common characteristic of all "testimonial" statements is the formality by which

they are produced. We also believe that "interrogation" carries with it a connotation of an at least slightly adversarial setting. *See* Roget's Thesaurus II 556 (Expanded ed.1988) (listing as first definition of "interrogate" as "To question thoroughly and relentlessly to verify facts: *interrogate the captured soldier.*").

■ We thus hold that when police arrive at the scene of an incident in response to a request for assistance and begin informally questioning those nearby immediately thereafter in order to determine what has happened, statements given in response thereto are not "testimonial." Whatever else police "interrogation" might be, we do not believe that word applies to preliminary investigatory questions asked at the scene of a crime shortly after it has occurred. Such interaction with witnesses on the scene does not fit within a lay conception of police "interrogation," bolstered by television, as encompassing an "interview" in a room at the stationhouse. It also does not bear the hallmarks of an improper ."inquisitorial practice." *See Crawford*, —— U.S. at ——, 124 S.Ct. at 1364. Thus, we conclude that Officer Mooney's questioning of A.H. at her residence shortly after the incident occurred does not qualify as "police interrogation" and A.H.'s statements at that time were not "testimonial." The new rule announced in *Crawford* does not affect their admissibility.

■ We further note that the very concept of an "excited utterance" is such that it is difficult to perceive how such a statement could ever be "testimonial." "The underlying rationale of the excited utterance exception is that such a declaration from one who has recently suffered an

---

5. A.H.'s battery affidavit would probably qualify as a "testimonial" statement, even if we were to conclude that it fell under a hearsay exception.

overpowering experience is likely to be truthful." *Hardiman v. State,* 726 N.E.2d 1201, 1204 (Ind.2000). To be admissible, an excited utterance "must be unrehearsed and made while still under the stress of excitement from the startling event." *Id.* "The heart of the inquiry is whether the declarants had the time for reflection and deliberation." *Id.* An unrehearsed statement made without time for reflection or deliberation, as required to be an "excited utterance," is not "testimonial" in that such a statement, by definition, has not been made in contemplation of its use in a future trial. *See Crawford,* ——— U.S. at ———, 124 S.Ct. at 1364. We hold, given the nature of the police questioning in this case and nature of the statement itself, that A.H.'s statement to Officer Mooney was "non-testimonial" and admissible as evidence against Hammon, notwithstanding *Crawford* and Hammon's apparent lack of an opportunity to cross-examine A.H. regarding her statement.[6]

### II.  Proper Allocation of Cash Bond

Hammon argues that the trial court erred in ordering that his $300.00 cash bond be retained to offset the costs of his defense by the public defender. The State concedes that the order was erroneous. We dealt with this issue in *Goffinet v. State,* 775 N.E.2d 1227, 1234 (Ind.Ct.App. 2002), *trans. denied,* where the Defendant's father paid Defendant's cash bond in its entirety and the trial court retained a portion of the bond payment to cover various fees. In that case, we held that Indiana Code Section 35–33–8–3.2(a)(2) "does not authorize the trial court to order any money retained from a bond remittance for any purpose unless the bond was a 10% cash or securities deposit." *Id.* at

1233–34. In this case, the State concedes that the trial court improperly retained Hammon's bond, which was not a 10% deposit, and we agree. Therefore, we 're-verse this portion of the trial court's order.

### Conclusion

We find that the trial court did not abuse its discretion in admitting Officer Mooney's testimony relating a statement made by the victim following the battery. The Supreme Court's recent decision in *Crawford v. Washington* does not change this result. Therefore, we affirm Hammon's conviction. However, we reverse the trial court's order that Hammon's cash bond be retained. We affirm in part and reverse in part.

Affirmed in part and reversed in part.

KIRSCH, C.J., and FRIEDLANDER, J., concur.

---

6. Hammon also argues that there is insufficient evidence to support his conviction, but the only basis for this argument is that Officer Mooney's testimony was improperly admitted.

Because we find that the trial court properly admitted Officer Mooney's testimony, we also find that the evidence presented amply supported the conviction.