Joshua ROGERS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0311–CR–593.

Court of Appeals of Indiana.

Sept. 10, 2004.

Jeffrey A. Baldwin, Baldwin & Dakich, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Joshua Rogers appeals his convictions after a bench trial of criminal recklessness as a Class D felony[1] and battery, as a Class A misdemeanor.[2] He raises four issues for appeal, which we consolidate and restate as:

1. Whether the trial court properly admitted hearsay testimony based on the excited utterance exception to the hearsay rule;

2. Whether the State presented sufficient evidence to convict Rogers of criminal recklessness; and

3. Whether the trial court erred when it sentenced Rogers.

We affirm in part and reverse in part.

1. Ind.Code § 35–42–2–2.

2. Ind.Code § 35–42–2–1.

3. Both parties, in their briefs, spell the victim's last name as "Faith." However, in the probable cause affidavit and the charging in-

## FACTS AND PROCEDURAL HISTORY

On November 13, 2002, Rogers and Jason Faith[3] were at Tiki Bob's, a bar in downtown Indianapolis. Faith had a brief encounter with Rogers in the men's restroom and headed toward the disc jockey to report the incident. Rogers approached Faith near the bar and hit him, causing Faith to fall to the cement floor face first, briefly lose consciousness, and cut his forehead.

Indianapolis Police were called and Officers Melanie Moore and Cedrick Young responded to the dispatch. Faith told Officer Moore he had seen Rogers in the restroom. Rogers was upset, hollering and kicking doors. Faith also informed Officer Moore that Rogers approached him in the bar area, threw him on the ground and caused him to lose consciousness. Rogers also gave a statement to Officer Young.

On November 14, 2002, the State filed charges against Rogers alleging one count of criminal recklessness as a Class D felony, one count of battery as a Class A misdemeanor, and one count of criminal mischief as a Class A misdemeanor.[4] A bench trial was conducted on July 9, 2003. The court found Rogers guilty of criminal recklessness and battery, but not guilty of criminal mischief.

## DISCUSSION AND DECISION

*1. Admission of Faith's Statements*

■ Rogers asserts the trial court improperly admitted testimony by Officer Moore regarding statements Faith made

formation, the victim's last name is spelled "Feith." For purposes of this opinion, we will refer to the victim as "Faith."

4. Ind.Code § 35–43–1–2.

to her. The trial court admitted this testimony as an excited utterance.

■ The admission or exclusion of evidence is a matter left to the sound discretion of the trial court, and a reviewing court will reverse only upon an abuse of that discretion. *Johnson v. State*, 671 N.E.2d 1203, 1205 (Ind.Ct.App.1996), *trans. denied* 683 N.E.2d 578 (1997). Ind. Evidence Rule 801(c) explains hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted. Hearsay evidence is generally inadmissible pursuant to Evid. R. 802. However, Evid. R. 803 enumerates exceptions to this rule.

■ Evid. R. 803(2) states that an excited utterance is not excluded by the hearsay rule even though the declarant is available as a witness. For a hearsay statement to be admitted as an excited utterance, three elements must be present: 1) a startling event has occurred; 2) a statement was made by a declarant while under the stress of excitement caused by the event; and 3) the statement relates to the event. *Brown v. State*, 683 N.E.2d 600, 603 (Ind.Ct.App.1997), *reh'g denied*, *trans. denied* 698 N.E.2d 1182 (Ind.1998); Evid. R. 803(2). Under this test, the heart of the inquiry is whether the statement is inherently reliable because the declarant was incapable of thoughtful reflection. 683 N.E.2d at 603. Further, the statement must be trustworthy under the facts of the particular case, and the trial court should focus on whether the statement was made while the declarant was under the influence of the excitement engendered by the startling event. *Id.*

In the present case, the State offered the testimony of Officer Moore regarding statements Faith made within seven minutes after the police arrived at Tiki Bob's. Faith described the incident to Officer Moore and identified Rogers as the perpetrator. Officer Moore testified that when she arrived at the scene, she interviewed Faith and he stated he had found Rogers in the men's restroom where he was visibly angry and pounding and kicking doors. Faith told Officer Moore that Rogers had knocked him to a cement floor and he lost consciousness temporarily. Officer Moore testified Faith was bleeding from a cut on his forehead, his voice was shaky, and he was visibly upset and shaking all over. She also testified Faith was not completely unaware of what was going on around him and he was able to tell his side of the story.

In *Gordon v. State*, 743 N.E.2d 376, 378 (Ind.Ct.App.2001), police responded to a domestic disturbance call and observed a woman who was "visibly shaking" and whose voice was "crackling and shaky." *Id.* The woman described to police the events that occurred that night and the officer recounted her statements at trial. We held that the officer's testimony was correctly admitted into evidence under the excited utterance exception to the hearsay rule because the officer's observations illustrated that the victim was still upset by the startling event she described to the officer and it was reasonable to infer that this event caused the victim's distress. *Id.*

Evid. R. 803(2) further requires that the statement for which one seeks admission "was made by declarant while under the stress of excitement caused by the event." Officer Moore's description of Faith as "visibly shaking" and "on the verge of tears" suggests he was still under the stress of the event. Further, it is reasonable to infer that Officer Moore responded promptly to the dispatch after receiving it and she arrived in a timely manner such that, when she arrived, Faith was still greatly affected by the earlier event.

■ Our supreme court has held "[t]he amount of elapsed time between the

incident and the utterance weighs in determining the ability of the witness to regain his or her composure and engage in reflective thought." *Holmes v. State*, 480 N.E.2d 916, 918 (Ind.1985). Thus, "the heart of an inquiry is whether the declarant was incapable of thoughtful reflection." *Jones v. State*, 800 N.E.2d 624, 627 (Ind. App.Ct.2003). Further, "[t]he amount of time that has passed between the event and the statement is relevant but not dispositive." *Burdine v. State*, 751 N.E.2d 260, 264 (Ind.Ct.App.2001) (citing *Noojin v. State*, 730 N.E.2d 672, 676 (Ind.2000)). "No precise length of time is required." *Gordon*, 743 N.E.2d at 378.

We next address the final element required to find the declarant's statement was an excited utterance. Evid. R. 803(2) requires that the statement at issue be related to the startling event. Faith's statement clearly was related to the facts and circumstances surrounding the startling event and this element is met.

Although we have concluded Faith's statements to Officer Moore fell under the excited utterance exception to the hearsay rule, that does not end our analysis, given a substantial change in Sixth Amendment jurisprudence announced by the United States Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004). Rogers argues that under *Crawford* the admission of Faith's utterances violated Rogers' right to confront and cross-examine Faith regarding his statements given to law enforcement.

In *Crawford*, the Supreme Court held that when the prosecution seeks to introduce a "testimonial" out-of-court statement into evidence against a criminal defendant, the Confrontation Clause of the Sixth Amendment requires two showings: (1) the witness who made the statement is unavailable; and (2) the defendant had a prior opportunity to cross-examine the witness. *Id.* 541 U.S. at ——, 124 S.Ct. at 1374. In reaching this holding, the Court squarely criticized and overruled *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). *Roberts* had established that hearsay statements made by an unavailable witness were admissible against a criminal defendant if the statement fell "within a firmly rooted hearsay exception" or otherwise bore "particularized guarantees of trustworthiness." *Id.* at 66, 100 S.Ct. 2531. By contrast, *Crawford* held: "Leaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices." *Crawford*, 541 U.S. at ——, 124 S.Ct. at 1364.

The Court then undertook an analysis of the state of the common law in 1791, when the Sixth Amendment was adopted, to support its conclusion that the Framers intended the Confrontation Clause to allow the admission of out-of-court "testimonial" statements by an unavailable witness only if the defendant had a prior opportunity for cross-examination. *Id.* at ———, 124 S.Ct. at 1365–66. Thus, proper determination of whether an out-of-court statement is admissible against a criminal defendant is no longer solely governed by whether it falls within a recognized exception to the hearsay rule. Instead, if the statement was made in a situation where the defendant did not have an opportunity for cross-examination, the statement must be excluded if it is "testimonial." If a statement is "non-testimonial," its admission in a criminal trial is left "to regulation by hearsay law...." *Id.* at ——, 124 S.Ct. at 1370.

The majority in *Crawford* expressly declined to give a precise definition to the word "testimonial." *Id.* at ——, 124 S.Ct. at 1374. It did offer some guidance, how-

ever. "Testimonial" statements need not necessarily be given under oath; unsworn statements may also be "testimonial." *Id.* at ——, 124 S.Ct. at 1364–65. The Court gave the following examples of "testimonial" statements:

> ex parte in-court testimony or its functional equivalent ... such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially ... extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions ... statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at ——, 124 S.Ct. at 1364 (citations omitted).

From these generalities, the Court extrapolated that statements made during a police "interrogation" would qualify as "testimonial" statements. *Id.* Again, however, the Court declined to precisely define "police interrogation," aside from noting that it used "the term 'interrogation' in its colloquial, rather than any technical legal, sense." *Id.* at ——, 124 S.Ct. at 1365 n. 4.

In *Hammon v. State*, 809 N.E.2d 945 (Ind.Ct.App.2004), *reh'g denied,* Hammon was convicted, following a bench trial, of domestic battery. We held that when police arrive at the scene of an incident in response to a request for assistance and begin informally questioning those nearby immediately thereafter in order to determine what has happened, statements given in response thereto are not "testimonial." We stated:

> Whatever else police "interrogation" might be, we do not believe that word applies to preliminary investigatory questions asked at the scene shortly after a crime has occurred. Such interaction with witnesses at the scene does not fit within a lay perception of police "interrogation" as encompassing an "interview" in a room at the stationhouse. It also does not bear the hallmarks of an improper "inquisitorial practice."

*Id.* at 952.

We further noted in *Hammon* that the very concept of an "excited utterance" is such that it is difficult to perceive how such a statement could ever be "testimonial." "The underlying rationale of the excited utterance exception is that such a declaration from one who has recently suffered an overpowering experience is likely to be truthful." *Id.* at 952–53. To be admissible, an excited utterance "must be unrehearsed and made while still under the stress of excitement from the startling event." *Id.* at 953. "The heart of the inquiry is whether the declarants had the time for reflection and deliberation." *Id.* An unrehearsed statement made without time for reflection or deliberation, as required to be an "excited utterance," is not "testimonial" in that such a statement, by definition, has not been made in contemplation of its use in a future trial. *See Crawford,* 541 U.S. at ——, 124 S.Ct. at 1364. Accordingly, *Hammon* held, given the nature of the police questioning in the case and nature of the statement itself, the victim's statement to the police officer was "non-testimonial" and admissible as evidence against Hammon, notwithstanding *Crawford* and Hammon's apparent lack of an opportunity to cross-examine the victim regarding her statement.

As in *Hammon,* we conclude that Officer Moore's questioning of Faith at Tiki Bob's shortly after the incident occurred does not qualify as "police interrogation" and Faith's statements at that time were

not "testimonial." Therefore, Rogers' reliance on *Crawford* is misplaced and it does not affect the admissibility of Faith's statements to Officer Moore. The trial court did not err in admitting Faith's hearsay as an excited utterance.

### 2. *Sufficiency of Evidence*

■ Next Rogers contends the evidence is insufficient to support his conviction of criminal recklessness because his self-defense claim was not contradicted by any testimony at trial. We disagree.

■■ Self-defense is justification for an otherwise criminal act. *Brown v. State,* 738 N.E.2d 271, 273 (Ind.2000). A person is justified in using reasonable force against another person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. Ind.Code § 35–41–3–2(a). Self defense is established if a defendant: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *See Wallace v. State,* 725 N.E.2d 837, 840 (Ind.2000).

■ Rogers correctly points out that the State carries the burden of disproving self-defense. *See, e.g., Wooley v. State,* 716 N.E.2d 919, 926 (Ind.1999). Therefore, once a defendant claims self-defense, the State bears the burden of disproving at least one of the elements beyond a reasonable doubt. *See Miller v. State,* 720 N.E.2d 696, 700 (Ind.1999). The State may meet its burden of proof by "rebutting the defense directly, by affirmatively showing that the defendant did not act in self defense, or by simply relying upon the sufficiency of its evidence in chief." *Id.*

■ The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any insufficiency of the evidence claim. *Wallace,* 725 N.E.2d at 840. We neither reweigh the evidence nor assess the credibility of the witnesses. *Id.* We look to the evidence most favorable to the verdict and reasonable inferences drawn therefrom. *Id.* We will affirm the conviction if there is probative evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.

In order to convict Rogers of criminal recklessness, the State was required to prove he (1) recklessly, knowingly, or intentionally (2) inflicted serious bodily injury on Faith. *See* Ind.Code § 35–42–2–2(d). The evidence supporting Rogers' conviction of criminal recklessness included Faith's statement to Officer Moore that Rogers hit him and knocked him to the ground, which resulted in Faith losing consciousness. Additional testimony was provided by Melissa Leverenz, a bartender at Tiki Bob's. She testified Faith was standing near the bar when Rogers approached him and the two spoke briefly before Rogers knocked Faith to the cement floor.

The only evidence admitted at trial regarding Rogers' claims of self-defense came from the testimony of Officer Young, who had interviewed Rogers shortly after his altercation with Faith. Officer Young testified Rogers told him Faith had touched his penis in the restroom, which was the cause of their altercation. Rogers presented no evidence to support a finding that when he hit Faith, he had a reasonable belief Faith was going to use unlawful force against him. The trial court correctly found sufficient evidence to rebut Rogers' claim he acted in self-defense.

### 3. *Sentencing*

#### a. *Criminal mischief*

■ Rogers argues the trial court improperly sentenced him for criminal mis-

chief even though he was found not guilty. The trial court found Rogers guilty of criminal recklessness and battery. At the sentencing hearing, the trial court stated the following:

Joshua Rogers, the Court sentences you to serve 545 days in the Department of Corrections. [sic] Give you credit for 2 days that you've served, plus 2 days of good time. Suspend all but 90 days. And order that the 90 days of executed time be served through Community Corrections Home Detention. And that you be placed on probation for 365 days and while you're on probation you must complete 12 weeks of Anger Control Counseling. Complete 80 hours of Community Service Work. Pay fine and costs in the amount of $250.00.

(Tr. of Sentencing Hearing at 10.) The trial court then stated: "And you also received a conviction for criminal mischief as a Class A Misdemeanor and the Court sentences you to serve 365 days in the Department of Correction with credit that you've served already and that time will run concurrent with the sentence in Count I." (*Id.* at 11.)

Despite this apparent misstatement by the trial court, the abstract of judgment and the chronological case summary reflect a sentence of 545 days for Rogers' criminal recklessness conviction (Count I) and a sentence of 365 days for his battery conviction (Count II). (Appellant's App. at 5–6, 13). Our independent review of the abstract and the chronological case summary reveals no sentence was imposed for Count III, criminal mischief. Because the trial court entered sentences for only the crimes of which Rogers was convicted, we conclude the trial court made an inadvertent verbal error in stating "criminal mischief" instead of "battery" when imposing the sentence at the hearing.

### b. *Double jeopardy violation*

Rogers also contends the trial court erred in sentencing him for both criminal recklessness and battery because each stemmed from the act of hitting Faith, and he was therefore subjected to double jeopardy. We agree.

"No person shall be put in jeopardy twice for the same offense." Ind. Const. art. I, § 14. Two or more offenses are the "same offense" if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Richardson v. State,* 717 N.E.2d 32, 49 (Ind.1999).

Under the actual evidence analysis in *Richardson,* the evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. To show that two challenged offenses are the "same offense," a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Id.*

Rogers' act of hitting Faith resulted in both the laceration to Faith's head and his losing consciousness. The State concedes and we agree that Rogers cannot be convicted of both offenses based on that one act. *See Adams v. State,* 754 N.E.2d 1033, 1035 (Ind.Ct.App.2001) (because the same act, striking the victim on the head with an ashtray, was used to establish both the touching for the two battery counts and the act causing substantial risk of bodily injury for criminal recklessness, Adams demonstrated a reasonable possibility that the same evidentiary facts were used to

establish the essential elements of the offenses).

Having found a double jeopardy violation, the only remaining determination is the appropriate remedy. "When convictions are found to contravene double jeopardy principles, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation." *Richardson*, 717 N.E.2d at 54. If reducing an offense will not cure the violation, then the conviction "with the less severe penal consequences" must be vacated. *Id.* at 54–55.

Therefore, we vacate the Class A misdemeanor battery conviction and sentence and leave standing the Class D felony criminal recklessness conviction and sentence.

The judgment is affirmed in part and reversed in part.

SULLIVAN, J., and VAIDIK, J., concur.