Affirmed and Opinion filed April 28, 2005









Affirmed and Opinion filed April 28, 2005.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00059-CR

____________

 

RANDALL BRUCE
SPENCER,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the Criminal
Court at Law No. 9

Harris County, Texas

Trial Court Cause No. 1192313

 



 

O P I N I O N

Appellant Randall Bruce Spencer appeals
from his conviction for the domestic assault of Michelle O’Mealey.  O’Mealey did not testify at trial, but the
trial court allowed two peace officers who responded to the scene after
O’Mealey called 911 to testify that O’Mealey told them appellant had hit
her.  Appellant contends this ruling
deprived him of his right to confront witnesses against him under the Sixth and
Fourteenth Amendments to the United States Constitution.  Because we conclude that O’Mealey’s
statements to the officers were not “testimonial,” we affirm.








In the early morning hours of September 5,
2003, Deputies John Igoe and Greg Thomason responded to a 911 hang-up call from
a residence in Harris County.  When they
arrived at the scene less than three minutes later, they found O’Mealey
standing in her front yard holding her nine-month old baby.  She had red marks on her left cheek and blood
coming from her nose and on her clothing. 
Her eyes were red and puffy as if she had been crying, and she was
shaking and visibly distraught.  She told
the deputies that she was in bed with her baby when appellant came in and laid
down next to her.  He then jumped on top
of her and the baby and started punching her in the face with his fist.  She also told the deputies that appellant had
been drinking earlier in the day.

After establishing that appellant was no
longer on the premises, the deputies accompanied O’Mealey back into the
residence, and she made a written statement. 
After O’Mealey refused any emergency treatment for her injuries, the
deputies left.  Shortly after, another
911 call came in from the same address. The deputies returned and found
appellant at the scene.  He was arrested
and charged with assault.








As often happens in domestic violence
cases, the victim, O’Mealey, did not testify at trial.[1]  The State put on its case through Deputies
Igoe and Thomason, who testified as to what they saw when they arrived at the
scene and what O’Mealey told them before they accompanied her inside the
residence and she gave a written statement. 
Appellant objected to admission of this evidence, arguing that it was
hearsay and deprived him of his right to confront his accuser.  The trial court admitted O’Mealey’s initial
statements to the officers under the excited utterance exception to the hearsay
rule.  On appeal, appellant does not
challenge the trial court’s determination that O’Mealey’s statements were
excited utterances.  Rather, he contends
that even if they were excited utterances, their admission violated his right
of confrontation as set forth in Crawford v. Washington, 541 U.S. 36
(2004), which was decided shortly after the case was tried.

In Crawford, the petitioner,
Crawford, stabbed a man who allegedly tried to rape his wife.  Id. at 38.  His wife gave a tape-recorded statement to
the police describing the stabbing.  Id.  She did not testify at trial, based on
spousal privilege.  Id. at
40.  Crawford claimed self-defense, and
the state sought to use his wife’s statement as evidence refuting his
self-defense theory.  Id.  Crawford objected, contending that admitting
his wife’s statement to the police violated his Sixth Amendment right to be
“‘confronted with the witnesses against him.’” 
Id. (quoting U.S. Const.
amend. VI).

The trial court admitted the evidence
under the rule of Ohio v. Roberts, 448 U.S. 56 (1980), which allowed
admission of an unavailable witness’s statement against a criminal defendant if
the statement bears “adequate indicia of reliability.”  Id. at 66 (internal quotation marks
omitted).  After thoroughly analyzing the
history of the Confrontation Clause and the evils it was designed to prohibit,
the Court concluded that the Roberts test strays from the original
meaning of the Confrontation Clause.  Crawford,
541 U.S. at 42–51.  Therefore, the Court
in Crawford established a new framework for analyzing a Confrontation
Clause claim.  If the statement at issue
is “testimonial,” it is inadmissible unless the declarant is unavailable and
the accused has had a prior opportunity for cross-examination.  Id. at 53–54.  Thus, the threshold issue under Crawford
is whether the statement to be admitted is testimonial.  








The Court did not define “testimonial,”
but it noted three formulations of “core” testimonial evidence:  (1) “ex parte in-court testimony or
its functional equivalent,” such as affidavits, custodial examinations, prior
testimony not subject to cross-examination, or “similar pretrial statements
that declarants would reasonably expect to be used prosecutorially,” (2)
“extrajudicial statements” of the same nature “contained in formalized
testimonial materials,” and (3) “statements that were made under circumstances
which would lead an objective witness reasonably to believe that the statement
would be available for use at a later trial.” 
Id. at 51–52.  The Court
further explained that the term “testimonial” applies “at a minimum to prior
testimony at a preliminary hearing, before a grand jury, or at a former trial;
and to police interrogations.”  Id.
at 68  The Court also declined to define
“police interrogation” but did note that “interrogation” is used “in its
colloquial, rather than any technical legal, sense.”  Id. at 53 n.4.








The issue we address is whether statements
made by a crime victim to police on the scene responding to the victim’s call
for help shortly after the crime are testimonial.  The only Texas case to address this issue is Key
v. State, __ S.W.3d __, No. 12-04-00030-CR, 2005 WL 467167 (Tex. App.—Tyler
Feb. 28, 2005, no pet. h.).[2]  In Key, a police officer arrived at a
residence in response to a disturbance call and found a man and a woman sitting
outside arguing.  The woman told the
officer the man had been restraining her all day and had pulled her to the
ground and injured her when she recently tried to run from the house.  At the man’s assault trial, the woman did not
testify, but the officer testified as to the woman’s statements to him.  Id. at *1.  In evaluating the man’s Crawford
issue, the court noted that “[t]he types of statements cited by the Crawford
court as testimonial all involve a declarant’s knowing responses to structured
questioning in an investigative environment or a courtroom setting where the
declarant would reasonably expect that his or her responses might be used in
future judicial proceedings.”  Id.
at *2.  In assessing whether the woman’s
statements were given in response to police interrogation, the court concluded
that the unstructured interaction between the officer and the woman while the
officer was responding to a call and securing and assessing the scene did not
amount to interrogation.  Id. at
*4; see also Gonzalez v. State, 155 S.W.3d 603, 609 n.4 (Tex.
App.—San Antonio 2004, pet. filed) (commenting, but not deciding, that
investigatory questioning immediately after a crime is likely not
interrogation); Wilson v. State, 151 S.W.3d 694, 697–98 (Tex. App.—Fort
Worth 2004, pet. filed) (finding that admission of non-testifying witness’s
self-initiated statements to police officers in response to unstructured
questions during the investigation of a crime did not violate Crawford);
Davis v. State, No. 2-03-305-CR, 2005 WL 183141, at *4 (Tex. App.—Fort
Worth Jan. 27, 2005, no pet. h.) (not designated for publication) (holding that
voluntary statements to the police initiated by the witness are not
interrogation and therefore are nontestimonial).








After concluding the statements were not
made in response to police interrogation, the Tyler court did not end its
analysis there.  Because the woman’s
statements were admittedly excited utterances, the court concluded they were
not testimonial as a matter of law because with an excited utterance, the
declarant has had no time for reflection or deliberation and thus has not made
the statement in contemplation of its use in a future trial.  Key, 2005 WL 467167, at *4–5.  We disagree with the Tyler court’s conclusion
that all excited utterances are nontestimonial. 
An excited utterance is a “statement relating to a startling event or
condition made while the declarant was under the stress of excitement caused by
the event or condition.”  Tex. R. Evid. 803(2).  The State urges us to categorically conclude,
as did the Tyler court, that excited utterances are nontestimonial.  This position has support in cases from other
jurisdictions.  Some courts have
expressed skepticism as to whether an excited utterance can ever be
testimonial.  See, e.g., People
v. Corella, 18 Cal. Rptr. 3d 770, 776 (Ct. App. 2004); People v. King, __ P.3d __, No. 02CA0201, 2005 WL
170727, at *5 (Colo. Ct. App. Jan. 27, 2005); Hammon v. State, 809 N.E.2d 945,
952–53 (Ind. Ct. App. 2004).  Others have
concluded that the characteristics that make a statement an excited utterance
are inconsistent with the statement being testimonial.  See, e.g., Fowler v. State, 809
N.E.2d 960, 964 (Ind. Ct. App. 2004); People v. Isaac, No. 23398/02,
2004 WL 1389219, at *4 (N.Y. Dist. Ct. June 16, 2004); State v. Anderson,
No. E2004-00694-CCA-R3-CD, 2005 WL 171441, at *4 (Tenn. Crim. App. Jan. 27,
2005).  All of these courts have focused
on the declarant’s lack of deliberation in making the excited utterance, which
they conclude indicates that the declarant could not have anticipated the
statement being used prosecutorially.  See
Corella, 18 Cal. Rptr. 3d at 776; King, 2005 WL 170727, at *5; Fowler, 809 N.E.2d at
964; Hammon, 809 N.E.2d at 952–53; Isaac, 2004 WL 1389219, at *4;
Anderson, 2005 WL 171441, at *4.

Certainly, the fact that a statement is an
excited utterance is a factor that can be considered when determining whether
the statement is testimonial.  However,
we note that Texas courts have held that a declarant’s state of excitement can
last long after the initial crime and that excited utterances can be made both
spontaneously and in response to questioning. 
See, e.g., Zuliani v. State, 97 S.W.3d 589, 596 (Tex.
Crim. App. 2003) (holding that statement made twenty hours after altercation in
response to a question was an excited utterance and stating: “Declarations made
either in response to questioning or after some time had elapsed are only two
factors in determining whether a statement is an excited utterance.  Neither factor alone is dispositive.”
(citation omitted)).  It is not
unreasonable to imagine a situation in which officers secure a scene and then
begin formal, structured questioning of witnesses (or the victim) who are still
under the stress of the situation.  We
are not convinced that responses to questions under such circumstances would be
nontestimonial.  Each situation should be
analyzed individually.  See Stancil v.
United States, 866 A.2d 799, 809 (D.C. Ct. App. 2005) (“Some excited
utterances are testimonial, and others are not, depending on the
circumstances.”).  Accordingly, we
decline to join those courts that have established a bright-line rule that
excited utterances can never be testimonial.








Though we disagree with its excited
utterance analysis, we agree with the Tyler court’s conclusion that statements
made to officers responding to a call during the initial assessment and
securing of a crime scene are not testimonial. 
See Key, 2005 WL 467167, at *4.  A majority of courts in other jurisdictions
have also held “that initial police-victim interaction at the scene of an
incident is not an interrogation.”  Id. at *3. 
For example, in Hammon, in concluding that a police officer’s
questioning did not constitute interrogation, the Indiana Court of Appeals
noted that the “common denominator” in the various examples of testimonial
statements given in Crawford, which was lacking here, “is the official
and formal quality of such a statement.” 
Hammon, 809 N.E.2d at 952. 
Even though the victim’s statements were given in response to
questioning from the officer, such informal questioning is not the same as
interrogation.  Id.  The court held that the victim’s statements
were not testimonial:

We thus hold that
when police arrive at the scene of an incident in response to a request for
assistance and begin informally questioning those nearby immediately thereafter
in order to determine what has happened, statements given in response thereto
are not “testimonial.”  Whatever else
police “interrogation” might be, we do not believe that word applies to
preliminary investigatory questions asked at the scene of a crime shortly after
it has occurred.   

Id.; accord Rogers v. State, 814
N.E.2d 695, 701–02 (Ind. Ct. App. 2004); Fowler, 809 N.E.2d at
962–64.

The California Court of Appeal reached a
similar conclusion in Corella. 
The court held that the victim’s statements, made to an officer
responding to her call for help, were not given in response to structured
police questioning and therefore were not testimonial:

Preliminary questions asked at the
scene of a crime shortly after it has occurred do not rise to the level of an
“interrogation.”  Such an unstructured
interaction between an officer and a witness bears no resemblance to a formal
or informal police inquiry that is required for a police interrogation as that
term is used in Crawford.

Corella, 18 Cal. Rptr. 3d at 776.   








In State v. Forrest, 596 S.E.2d 22
(N.C. Ct. App. 2004), the North Carolina Court of Appeals analyzed whether a
kidnap victim’s spontaneous statements to police immediately after being
rescued were testimonial.  Id. at
24–25.  The court concluded that such
statements were not the product of police interrogation and therefore not
testimonial.  Id. at 27.  “Crawford protects defendants from an
absent witness’s statements introduced after formal police interrogations in
which the police are gathering additional information to further the
prosecution of the defendant.  Crawford
does not prohibit spontaneous statements from an unavailable witness like those
at bar.”  Id.  

The relevant Texas authority, along with Hammon,
Corella, Forrest, and a majority of other courts, establish
several principles that guide our analysis in this case:  

(1)     Testimonial statements are official and
formal in nature.  See Key, 2005
WL 467167, at *2; Wilson, 151 S.W.3d at 698; Corella, 18 Cal.
Rptr. 3d at 776; Fowler, 809 N.E.2d at 964; Hammon, 809 N.E.2d at
952; Forrest, 596 S.E.2d at 27; see also People v. Watson, No.
7715/90, 2004 WL 2567124, at *10 (N.Y. Sup. Ct. Nov. 8, 2004) (unpublished
disposition) (“Crawford, therefore, suggests that a testimonial
statement in the context of a police interrogation is one which the declarant
makes knowingly in response to structured questioning which the government is
undertaking in furtherance of the prosecution of the defendant, or under some
other circumstances which renders the statement a ‘formal’ declaration.”).

(2)     Interaction with the police initiated by a
witness or the victim is less likely to result in testimonial statements than
if initiated by the police.  See Wilson,
151 S.W.3d at 698; Davis, 2005 WL 183141, at *4; Corella, 18 Cal.
Rptr. 3d at 776; see also People v. Moscat, 777 N.Y.S.2d 875, 879–80
(Crim. Ct. 2004) (finding that statements made during 911 call were
nontestimonial, in part because the call is typically initiated by the victim,
not the police).

(3)     Spontaneous statements to the police are
not testimonial.  See Davis, 2005
WL 183141, at *4; Forrest, 596 S.E.2d at 27; see also Watson,
2004 WL 2567124, *14 (holding that an unprompted remark by witness to police on
the scene was nontestimonial); Commonwealth v. Gray, 867 A.2d 560, 577
(Pa. Super. Ct. 2005) (noting the consensus that excited utterance statements
volunteered to police to obtain their assistance are nontestimonial).








(4)     Responses
to preliminary questions by police at the scene of a crime while police are
assessing and securing the scene are not testimonial.  See Key, 2005 WL 467167, at *3–4;
Gonzalez, 155 S.W.3d at 609 n.4; Wilson, 151 S.W.3d at 698; Corella,
18 Cal. Rptr. 3d at 776; Fowler, 809 N.E.2d at 964; Hammon, 809
N.E.2d at 952; see also United States v. Webb, No. DV-339-04, 2004 WL
2726100, at *3 (D.C. Super. Ct. Nov. 9, 2004) (finding “investigatory
questioning at the scene of a crime soon after the criminal event” to be
nontestimonial (emphasis omitted)).   








Applying these principles to the case at
bar, we find that O’Mealey’s statements to the deputies were not
testimonial.  O’Mealey summoned the
police for help.  She, not the police,
initiated the contact.  The record is
unclear as to whether her statements to the deputies were unprompted or in
response to questioning.[3]  Deputy Igoe testified that he immediately
asked O’Mealey if appellant was still on the scene as he could be a threat to
O’Mealey or the officers.  This simple,
preliminary question designed to ensure the safety of those on the scene does
not amount to interrogation.  The deputies’
remaining testimony merely reflects what O’Mealey “said” or “told” them.  However, even assuming O’Mealey’s statements
were made in response to questioning, preliminary questions when police arrive
at a crime scene to assess and secure the scene do not constitute
interrogation.[4]  They bear no indicia of the formal,
structured questions necessary for statements to be testimonial.  Thus, we conclude that O’Mealey’s statements
to the deputies upon their arrival at the scene were not testimonial,[5]
and the trial court’s admission of the statements did not violate appellant’s
rights under the Confrontation Clause. 
We overrule appellant’s sole issue.

The judgment of the trial court is affirmed.

 

 

 

 

 

/s/      Leslie Brock Yates

Justice

 

 

 

 

Judgment
rendered and Opinion filed April 28, 2005.

Panel
consists of Justices Yates, Anderson, and Hudson.

Publish
— Tex. R. App. P. 47.2(b).











[1]   As the
Indiana Court of Appeals recently noted, “[o]ne recent scholarly article
estimates that between eighty and ninety percent of domestic violence victims
recant their accusations or refuse to cooperate with a prosecution.”  Fowler v. State, 809 N.E.2d 960, 965 (Ind. Ct. App. 2004) (citing Tom
Lininger, Evidentiary Issues in Federal Prosecutions of Violence Against
Women, 36 Ind. L. Rev. 687,
709 n.76 (2003)).





[2]  The Court of
Criminal Appeals has only briefly addressed a Crawford issue, noting
that “casual remarks that [a witness] spontaneously made to acquaintances” were
not testimonial.  Woods v. State,
152 S.W.3d 105, 114 (Tex. Crim. App. 2004). 
This court addressed Crawford in a different context than we
consider here, holding that a videotaped statement given to police was
testimonial.  See Gutierrez v.
State, 150 S.W.3d 827, 830 (Tex. App.—Houston [14th Dist.] 2004, no pet.); see
also Jahanian v. State, 145 S.W.3d 346, 350 (Tex. App.—Houston [14th
Dist.] 2004, no pet.) (finding that written statement given during police
investigation after witness had become a suspect was testimonial).  The only real split of authority in Texas
cases involves whether police questioning of a victim at the hospital is
testimonial.  Compare Wall v. State,
143 S.W.3d 846, 851 (Tex. App.—Corpus Christi 2004, pet. filed) (statements
given following questioning at hospital testimonial), with Cassidy v. State,
149 S.W.3d 712, 716 (Tex. App.—Austin 2004, pet. ref’d) (statements given
following questioning at hospital nontestimonial), cert. denied, No.
04-8093, 2005 WL 637575 (Mar. 21, 2005).





[3]  It is not
surprising that the testimony was not developed this way, given that this case
was tried before Crawford was decided and highlighted the significance
of police interrogation in assessing whether a statement is testimonial.





[4]  The lead case
expressing an alternative view is Lopez v. State, 888 So. 2d 693 (Fla.
Dist. Ct. App. 2004).  In Lopez,
when officers encountered an alleged kidnap victim and asked what happened, the
victim said he had been abducted at gunpoint by the defendant.  Id. at 695.  In assessing whether the victim’s statements
to the officer were testimonial, the court agreed that they did not fall within
the first or second of the core classes of testimonial statements outlined in Crawford
because  they were informal and not made
in response to a structured police inquiry. 
Id. at 698.  However, the
court concluded the statements were testimonial under the third core class of
testimonial statements, which it characterized to include statements “meant to
be used against someone in court.”  Id.  Thus, if a statement is made to a person with
authority, such as a police officer, for the purpose of accusing someone, it is
testimonial.  Id. at 699.  We disagree with the Lopez court’s use
of this third category to broaden the spectrum of statements to the police that
are testimonial.  Crawford clearly
states that responses to police interrogations are testimonial statements, see
541 U.S. at 52, and we do not read Crawford as indicating that responses
to questions that do not rise to the level of interrogation are
testimonial.  See Hammon, 809
N.E.2d at 952 (distinguishing between police interrogation, which gives rise to
testimonial statements, and police questioning, which does not); accord King,
2005 WL 170727, at *5; Webb, 2004 WL 2726100, at *3; Fowler, 809
N.E.2d at 964.





[5]  The State does
not argue that the written statement O’Mealey provided once the deputies
accompanied her into her house is nontestimonial.  Indeed, at that point, the entire character
of the interaction changed, taking on a much more formal and structured
quality.